

RECEIVED

JAN - 5 2012

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

UNITED STATES OF AMERICA )
*ex rel.* PAUL CAIRNS, TERRY CLEAVER, M.D., )
KYLE COLLE, M.D., SCOTT GIBBS, M.D., )
PAUL TOLENTINO, M.D., and KEVIN )
VAUGHT, M.D., and DANIEL HENSON )
               )
    Relators, )
               )
vs. )
               )
D.S. MEDICAL, L.L.C., )
MIDWEST FAMILY CARE, L.L.C., )
MIDWEST NEUROSURGEONS, L.L.C., )
MOUNT AUBURN MEDICAL GROUP, L.L.C., )
d/b/a MOUNT AUBURN AESTHETICS GROUP, )
SONJAY FONN, M.D., and )
DEBORAH SEEGER )
               )
    Defendants. )

12 CV0 0004-SNLJ

Case No.

**FILED UNDER SEAL**

## COMPLAINT FOR DAMAGES UNDER THE FALSE CLAIMS
## ACT, 31 U.S.C. §3729 ET SEQ.

**JENSEN, BARTLETT & SCHELP, LLC**
Jeffrey B. Jensen, #46745MO
Matthew T. Schelp, #45724MO
Matthew P. Diehr, #61999MO
222 South Central Avenue, Suite 110
St. Louis, MO 63105
(314) 725-3939 Telephone
(314) 725-5595 Facsimile

ATTORNEYS FOR RELATORS

## Parties, Jurisdiction, and Venue

1.      Relator #1, Paul Cairns ("Cairns"), is a citizen of the United States and a resident of Cape Girardeau, Missouri, within the Southeastern Division of the Eastern District of Missouri.

2.      Relators #2-6, Drs. Terry Cleaver ("Cleaver"), Kyle Colle ("Colle"), Scott Gibbs ("Gibbs"), Paul Tolentino ("Tolentino"), and Kevin Vaught ("Vaught") are citizens of the United States and residents of Cape Girardeau, Missouri, within the Southeastern Division of the Eastern District of Missouri.  Relators #2-6 are experienced physicians who have seen prior patients of Dr. Sonjay Fonn and can attest to his performance and recommendation of unnecessary medical procedures and preparation of insufficient Evaluation and Management determinations.  Relators #2-6 operate the Brain and NeuroSpine Clinic of Missouri, L.L.C.

3.      Relator #7, Daniel Henson, is a Certified Surgical Assistant who was employed by Fonn between approximately 2008 and August 2011 and who can attest to false billings to Medicare and Medicaid for, *inter alia*, epidural steroid injections and selective nerve root blocks.

4.      Defendant Sonjay Fonn, M.D. ("Fonn") is a physician practicing in Cape Girardeau both individually and under certain business entities in the field of neurosurgery, and specializing in cranial, spine, and peripheral nerve surgery, including but not limited to the following procedures: spinal fusions, such as posterior lumbar inter-body fusion, anterior cervical decompression fusion, and anterior lumbar interbody fusion, laminectomy, kyphoplasty, vertebroplasty, artificial disc replacement, craniotomy, discectomy, peripheral nerve decompression, microdiscectomy, lumbar epidural steroid injection, cervical epidural steroid injection, and selective nerve root block.  A large portion of the patients seen by Fonn are covered by Medicare or Medicaid.

2

5.     Defendant Deborah Seeger ("Seeger") is Fonn's fiancée, and she owns and operates a medical sales firm, D.S. Medical, L.L.C., which serves as the exclusive provider of certain equipment to Fonn.  Seeger also operates Midwest Family Care, L.L.C. for which Fonn serves as Collaborating Physician.

6.     Midwest Neurosurgeons, L.L.C. ("Midwest Neurosurgeons"), 304 South Mount Auburn Road, Cape Girardeau, Missouri, is a Missouri limited liability company formed under the laws of Missouri on December 4, 2008.  Midwest Neurosurgeons is the primary entity by and through which Fonn practices medicine and perpetrates his fraud on the United States.

7.     Mount Auburn Aesthetics Group is a fictitious registration filed on November 18, 2009 for Mount Auburn Medical Group, L.L.C. (collectively, "Mount Auburn"), 150 Mt. Auburn Road, Cape Girardeau, Missouri, is a Missouri limited liability company formed under the laws of Missouri on December 8, 2004.  Mount Auburn is another entity by and through which Fonn practices medicine, and it contributes to the fraud as the owner and operator of the facility where Fonn practices.

8.     D. S. Medical, L.L.C. ("D.S."), also located at 304 South Mount Auburn Road, Cape Girardeau, Missouri, is a Missouri limited liability company formed under the laws of Missouri on November 12, 2008.  D.S. is another entity directly responsible for the fraud on the United States in that it is the exclusive provider of certain medical equipment to Fonn.

9.     Midwest Family Care, L.L.C. ("Midwest Family Care"), 36 Doctors Park, Cape Girardeau, Missouri, is a Missouri limited liability company formed under the laws of Missouri on February 16, 2011.  Midwest Family Care provides physicals, well baby care, medical testing, annual checkups, routine health services, and family planning.  Seeger operates Midwest Family Care and is an employee, and Fonn serves as Collaborating Physician for Midwest Family Care.

Midwest Family Care serves as an additional patient funnel for future surgery patients of Fonn, and as such contributes to the fraud perpetrated on the United States.

## Jurisdiction and Venue

10.     Subject matter and personal jurisdiction exist pursuant to the False Claims Act (31 U.S.C. §3730(b)(1) and 31 U.S.C. §3732(a)) because Relators' claims seek remedies on behalf of the United States for Defendants' multiple violations of 31 U.S.C. §3729 within the Eastern District of Missouri, and because Defendants are doing business and transact business in the Eastern District of Missouri.

11.     Venue exists pursuant to 31 U.S.C. §§3730(b)(1) and §3732(a) because Defendants are qualified to do business in the State of Missouri and within the Eastern District of Missouri, and at least one of the defendants transacts or committed acts proscribed by §3729 in the State of Missouri and the Eastern District of Missouri.

## Overview

12.     This Complaint concerns violations of the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, the federal False Claims Act, 31 U.S.C. § 3729(a)-(b), and Missouri law related to: (1) having physician assistants and surgical assistants perform medical procedures and surgery on patients while billing Medicare and Medicaid as if Fonn had performed the procedures, and (2) receiving kickbacks from Seeger, D.S., and Midwest Family Care.

## Doctor Fonn's Improper Use of Non-Physicians

13.     Fonn is a licensed physician in the State of Missouri, and was at all relevant times a member and/or manager of Midwest Neurosurgeons, and a member and/or manager of Mount Auburn. Upon information and belief, Fonn is the sole owner of Midwest Neurosurgeons and the only physician ever employed by that entity.

4

14.     Fonn's practice with Midwest Neurosurgeons specializes in cranial, spine, and peripheral nerve surgery, including but not limited to the following procedures: spinal fusions, such as posterior lumbar inter-body fusion, anterior cervical decompression fusion, and anterior lumbar interbody fusion, laminectomy, kyphoplasty, vertebroplasty, artificial disc replacement, craniotomy, discectomy, peripheral nerve decompression, microdiscectomy, lumbar epidural steroid injection, cervical epidural steroid injection, and selective nerve root block.

15.     Each of these procedures is complicated and involves extraordinary risk to the patient, and each requires the administration of anesthetics and/or other medical injections prior to performing the operation.

16.     Missouri Code of State Regulations 19 CSR30-20.001 provides as follows, in pertinent part:

> "(2) Notwithstanding any other rule in the chapter, anesthesia in hospitals shall be administered only by qualified anesthesiologists, physicians or dentists trained in anesthesia, certified nurse anesthetists, anesthesiologist assistants or supervised students in an approved educational program . . ."

17.     Providers billing Medicare or Medicaid are required to provide correct Medicare Identification Numbers or Medicaid provider numbers when submitting bills to Medicare or Medicaid.

18.     Fonn and Midwest Neurosurgeons routinely have allowed, promoted, and instructed surgical assistants and physician assistants to perform unsupervised, complicated, and high-risk advanced spinal procedures, which were well beyond the employees' scope of clinical practice, education, and training. This course of conduct constituted the unlawful practice of medicine and surgery and was in complete contravention to the recognized standard of care under RSMo. Section 334.735.1 with reckless disregard for the well-being of patients.

5

19.     Fonn instructed surgical assistants and physician assistants to conduct in excess of 1,000 lumbar epidural steroid injections over the past four years without supervision by Fonn or without Fonn even being present in the office suite. These advanced spinal injections are highly risky given the potential for dural puncture, post-dural puncture headache, epidural hematoma, or damage to the spinal nerves or structures, including paralysis. Upon information and belief, these procedures were billed to Medicare and Medicaid as if they had been performed by Fonn in contravention of Medicare and Medicaid requirements and constituted the unlawful practice of medicine and surgery. Surgical assistants and physician assistants performed the injections, handwrote dosage amounts on medical records, and left stacks of the records for Fonn to sign at periodic intervals, usually daily, as if he had performed the injections.

20.     In the same manner, Fonn instructed surgical assistants and physician assistants to conduct hundreds of cervical epidural steroid injections over the past five years. Fonn did not supervise and was not present in the office suite during these procedures. These injections are even more risky than lumbar injections given their proximity to the spinal cord and the incidence of major complications that are well-documented throughout clinical literature, such as spinal cord injury, respiratory arrest, spinal cord infarction, and fatal hemorrhagic brainstem infarction. Upon information and belief, these procedures were also billed to Medicare and Medicaid, in contravention to Medicare and Medicaid requirements and constituted the unlawful practice of medicine and surgery. All of these procedures were documented as if they had been performed by Fonn. This was accomplished by the same practice, whereby surgical assistants and physician assistants handwrote details of the medical procedures into medical records and left signature lines blank for Fonn to sign at approximately daily intervals.

21.     Fonn instructed surgical assistants and physician assistants to conduct innumerable selective nerve root block injections over the past five years. These injections are also highly risky given their proximity to the spinal cord and spinal structures. Upon information and belief, these procedures were billed to Medicare and Medicaid as if they had been performed by Fonn, in contravention to Medicare and Medicaid requirements, and constituted the unlawful practice of medicine and surgery. Fonn did not supervise and was not even present during these procedures.

22.     In addition, Fonn allowed surgical assistants to perform carpal tunnel surgery on patients, which constituted the unlawful practice of medicine and surgery, and billed Medicare and Medicaid for the surgeries as if performed by Fonn in contravention to Medicare and Medicaid requirements. The U.S. Department of Health and Human Services, Office of Inspector General, has identified as problematic such performance of services by non-physicians. In its Work Plan for Fiscal Year 2012, the Inspector General states,

> We also found that unqualified non-physicians performed 21 percent of the services that physicians did not perform personally. Incident-to services represent a program vulnerability in that they do not appear in claims data and can be identified only by reviewing the medical record. They may also be vulnerable to overutilization and expose Medicare beneficiaries to care that does not meet professional standards of quality.

### Fonn's False Claims and Kickback

23.     Fonn is engaged in an exclusive arrangement for certain medical supplies from his fiancée Deborah Seeger, an employee of D.S., Mount Auburn, and Midwest Family Care. This equipment includes Pedicle Screw Systems, MIS Systems, Anterior Cervical Plating Systems, Posterior Cervical Systems, Anterior Lumbar Plating Systems, Corpectomy Systems, Silicon Nitride Interbody Spacers and PEEK interbody spacers.

24.     The basic premise of Fonn's scheme is that D.S. sells medical equipment to Fonn at either Midwest Neurosurgeons or Mt. Auburn.

25.     Upon information and belief, Fonn performs procedures at Mt. Auburn on patients who have private health insurance where procedural reimbursement rates are higher than those provided by Medicare or Medicaid. In these cases, Fonn resells D.S. equipment to private insurance companies at a greater profit. Fonn directs less profitable Medicare and Medicaid patients to St. Francis Medical Center, 211 Saint Francis Drive, Cape Girardeau, Missouri, where he still performs the procedures. In these cases, Fonn insists on using D.S. equipment, which D.S. sells directly to St. Francis Medical Center, which in turn bills Medicare or Medicaid, with St. Francis Medical Center frequently obtaining little to no profit on this D.S. equipment.

26.     This exclusive arrangement between Fonn and Seeger results in large profits to Seeger. Fonn has bragged that his earnings and Seeger's earnings exceed $8 million per year between his work as a neurosurgeon and his profits from the D.S. Medical spinal distributorship.

27.     Upon information and belief, Seeger kicks back large sums of money to Fonn directly and indirectly through sharing in the profits of Midwest Family Care. Upon information and belief, Seeger uses these profits to fund an extravagant lifestyle for Fonn, including exotic travel as well as ownership and operation of a large yacht in Florida. Upon information and belief, Fonn and Seeger cohabit outside of marriage for purposes of evading application of the Stark Act.

### The Federal Anti-Kickback Statute

28.     As enacted in 1972, the federal Anti-Kickback statutes made it a misdemeanor to solicit, offer, or receive "any kickback or bribe in connection with" furnishing covered goods or

services or referring a patient to a provider of those services. *See Social Security Amendments Act*, Pub.L. No. 92-603 §§ 242(b) and 242(c), 86 Stat. 1419 (1972).

29.     Congress expanded the language in 1977 to prohibit the solicitation or receipt of "any remuneration (including any kickback, bribe, or rebate)" in return for referrals, to prohibit the offer or payment of such remuneration to induce referrals, and to make violations of the statutes a felony. *See Medicare-Medicaid Antifraud and Abuse Amendments*, Pub.L. No. 95-142, 91 Stat. 1175, 1181, 1182 (1977).

30.     In 1980, the knowing and willful requirement was added, *Omnibus Reconciliation Act of 1980*, Pub.L. No. 96-499, 94 Stat. 2599, 2625 (1981), and in 1987, the Medicare and Medicaid statutes were combined into one statute (42 U.S.C. §1320a-7b) and the Office of the Inspector General was authorized to exclude individuals and entities that violated the statutes from the Medicare and Medicaid programs. *See Medicare and Medicaid Patient and Program Protection Act of 1987*, Pub.L. No. 100-93, 101 Stat. 680, 681-82 (1989).

31.     Currently, the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), provides in pertinent part:

(b)     Illegal remunerations

(1)     whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in case or in kind -

\*\*\*

(B)     in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than 5 years, or both.

(2)     whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in case or in kind to any person to induce such person-

***

(B)     to purchase, lease, order, or arrange for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than 5 years, or both.

32.     Any person or entity that commits an act described in paragraph (1) or (2) of section 1320a-7b(b) is subject, in addition to any other penalties prescribed by law, to a civil money penalty of not more than $50,000 for each such act, and is subject to an assessment of damages. 42 U.S.C. §1320a-7a. In addition, the Secretary may exclude the person or entity from participation in federal health care programs and may direct appropriate state agencies to exclude the person or entity from participation in state health care programs as well. 42 U.S.C. §1320a-7a(a); *see also* 42 U.S.C. § 1320a-7(a) and (b).

## The False Claims Act

33.     The False Claims Act was enacted in 1863 to combat widespread fraud by government contractors during the Civil War. It provides that any person who (1) knowingly presents or causes to be presented to an official or employee of the United States Government a false or fraudulent claim for payment or approval, or (2) knowingly makes or uses a false record or statement to get a false or fraudulent claim paid or approved by the Government, or (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid, is liable to the Government for a civil penalty of $5,000 to $10,000 and treble damages. 31 U.S.C. §3729(a).

34.     In *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123 (2008), a recent seminal case in this area, the Supreme Court held that is was not necessary for a defendant to actually present for payment a false claim to the federal government to become liable under the FCA.  "What [the FCA] demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting 'a false or fraudulent claim paid or approved by the Government."  *Id.* at 2130.

35.     In *United States ex rel. McNutt v. Haleyville Medical Supplies, Inc.*, 423 F.3d 1256, 1259-60 (11th Cir. 2005), the Eleventh Circuit held that a defendant who made a false certification of compliance with the Anti-Kickback Statute when submitting claims for Medicare reimbursement can be held liable under the FCA.  It explained, "When a violator of government regulations is ineligible to participate in a government program and that violator persists in presenting claims for payment that the violator knows the government does not owe, that violator is liable, under the [False Claims] Act, for its submission of those false claims."  *Id.* at 1259.

36.     Several other courts have followed the reasoning in *McNutt*, holding that false certification for the purpose of receiving a payment or benefit is the practical equivalent of a statutory false claim. *See e.g. United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 232 (1st Cir. 2004) (involving FCA claims for Medicare and Medicaid benefits); *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 243 (3rd Cir. 2004) ("A certificate of compliance with federal health care law is a prerequisite to eligibility under the Medicare program."); *United States ex rel. Thompson v. Comubia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997) ("Thus, where the government has conditioned payment of a claim upon a claimant's certification or compliance with, for example, a statute or regulation, a claimant

submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation."); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F.Supp.2d 258, 264 (D.D.C. 2002) ("Where the government pays funds to a party and would not have paid those funds had it known of a violation lf a law or regulation, the claim submitted for those funds contained an implied certification of compliance with the law or regulation and was fraudulent.").

### Conclusion

37.     Fonn, Seeger, Midwest Neurosurgeons, Mt. Auburn, Midwest Family Care, and D.S. presented to the Government claims for payment that were expressly and impliedly false or fraudulent, constituting factually and legally false and fraudulent statements.

38.     Claims for payment submitted to the Government by Fonn, Seeger, Midwest Neurosurgeons, Mt. Auburn, Midwest Family Care, and D.S. were factually false in that Defendants submitted for payment incorrect descriptions of the transactions and services or requests for reimbursement for transactions and services that were never provided as described by the defendants.

39.     Claims for payment submitted to the Government by Fonn, Seeger, Midwest Neurosurgeons, Mt. Auburn, Midwest Family Care, and D.S. were legally false by the defendants' certification of compliance with federal statutes and regulations as a condition of payment.

40.     Fonn, Seeger, Midwest Neurosurgeons, Mt. Auburn, Midwest Family Care, and D.S. made, used, and caused to be made and used, false records, statements, and explicit and implicit certifications to get false claims paid in violation of 31 U.S.C. § 3729(a)(2).

41.     Fonn, Seeger, Midwest Neurosurgeons, Mt. Auburn, Midwest Family Care, and D.S. knew or should have known that the claims for payment submitted to the Government were false or fraudulent.

42.     Fonn, Seeger, Midwest Neurosurgeons, Mt. Auburn, Midwest Family Care, and D.S. have also violated the federal Anti-Kickback Statute through Fonn's exclusive use of D.S. medical equipment for his medical procedures at St. Francis Medical Center and the subsequent kickbacks provided by Seeger, Midwest Family Care, and/or D.S. to Fonn, Midwest Neurosurgeons, and/or Mt. Auburn. 42 U.S.C. § 1320a-7b.

43.     Fonn, Seeger, Midwest Neurosurgeons, Mt. Auburn, Midwest Family Care, and/or D.S. have also engaged in egregious violations of Missouri law applicable to the administration of advanced spinal injection and other procedures.

44.     Relators are ready and willing to cooperate in an investigation regarding this conduct.

## LEGAL VIOLATIONS
## COUNT I

Civil False Claims Act, 31 U.S.C. § 3729(a)(1)

45.     Relators incorporate by reference paragraphs 1-44 inclusive above.

46.     Defendants presented to the Government claims for payment.

47.     Defendants' claims for payment submitted to the Government were expressly and impliedly false or fraudulent, constituting factually and legally false and fraudulent statements and claims for payment by the Federal Government.

48.     Defendants' claims for payment submitted to the Government were factually false in that Defendants submitted for payment incorrect description of the transactions and services or

13

requests for reimbursement for transactions and services that never provided as described by Defendants.

49.     Defendants' claims for payment submitted to the Government were legally false by Defendants' certification of compliance with federal statutes and regulations as a condition of payment.

50.     Defendants knew or should have known that the claims for payment submitted to the Government were false or fraudulent.

51.     The Government suffered actual damages as direct and proximate result of the false or fraudulent claims, in the form of Medicare reimbursement payments for ineligible medical procedures, services and charges.

## COUNT II

Civil False Claims Act, 31 U.S.C. § 3729(a)(2)

52.     Relators incorporate by reference paragraphs 1-51 inclusive above.

53.     Defendants signed and certified billing statements promising to comply with all statutes and regulations applicable to the Medicare billing process.

54.     Defendants made, used, and caused to be made and used, false records, statements, and explicit and implicit certifications to get false claims paid in violation of 31 U.S.C. § 3729(a)(2).

55.     Defendants knew or should have known that the statements made in order to get claims for payment submitted to the Government paid were false or fraudulent.

56.     The Government suffered actual damages as direct and proximate result of the false or fraudulent claims, in the form of Medicare reimbursement payments for ineligible medical procedures, services and charges.

## COUNT III

Medicare Act Civil Monetary Penalties, 42 U.S.C. § 1320a-7a

57.     Relators incorporate by reference paragraphs 1-56 inclusive above.

58.     Defendants presented or caused to be presented to the United States claims for payment that Defendants knew or should have known were false or fraudulent in violation of 42 U.S.C. § 1320a-7a (a)(1)(B).

59.     Violation of the foregoing statute authorizes the United States to recover $10,000 for each item or service; $50,000 for each false statement; or three times the amount claimed for payment.

60.     The Government suffered actual damages as direct and proximate result of the the defendants' false or fraudulent claims.

## COUNT IV

Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b

61.     Relators incorporate by reference paragraphs 1-60 above.

62.     Defendants engaged in, solicited, offered and received illegal kickbacks in connection with "furnishing covered goods or services or referring a patient to a provider of those services."

63.     The violation of the foregoing statute authorizes the United States to recover a civil monetary penalty of not more than $50,000 for each act and to seek the exclusion of any person or entity from the participation in federal health care programs.

64.     The Government suffered actual damages as a result of the defendants' kickback scheme.

## RELIEF REQUESTED

**WHEREFORE**, the United States of America, by and through qui tam Relators, respectfully requests the Court to:

1.      Enter judgment of liability against all Defendants on Counts I-IV;

2.      Enter judgment awarding the United States all statutory damages and penalties, attorneys' fees and costs recoverable under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, based on the evidence to be presented at trial on Counts I and II;

3.      Enter judgment awarding the United States all statutory damages and penalties, attorneys' fees and costs recoverable under the Medicare Act Civil Monetary Penalties, 42 U.S.C. § 1320a-7a, *et seq.*, based on the evidence to be presented at trial on Count III;

4.      Enter judgment awarding the United States all statutory damages and penalties, attorneys' fees and costs recoverable under the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, *et seq.*, based on the evidence to be presented at trial on Count IV;

5.      Enter findings that Relators qualify as proper relators to bring this action in a qui tam capacity and entitled to share in the relief obtained; and

6.      Provide such other relief as the Court deems proper.

Respectfully submitted,

JENSEN, BARTLETT & SCHELP, LLC

By:

Jeffrey B. Jensen, #46745MO
Matthew T. Schelp, #45724MO
Matthew P. Diehr, #61999MO
Attorneys for Relators
222 South Central Avenue, Suite 110
St. Louis, MO 63105
(314) 725-3939 Telephone
(314) 725-5595 Facsimile