**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| **United States, ex rel. Cairns et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )  **Case No. 1:12CV00004 AGF** |
| | ) |
| **D. S. Medical et al.,** | ) |
| | ) |
| **Defendants,** | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS BASED ON RULE 9(b)

Come now Defendants, through their respective counsel, and move the Court to dismiss the Complaint in Intervention because its lacks the particularity required under Rule 9(b).

"Because the [False Claims Act] is an anti-fraud statute, complaints alleging violations of the [False Claims Act] must comply with Rule 9(b)." *United States ex rel. Dunn v. N. Mem'l Health Care*, 739 F.3d 417, 419 (8th Cir. 2014) (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006)). This is, of course, even more true when the alleged False Claims Act ("FCA") violation is premised on the criminal Anti-Kickback Statute ("AKS"). Though the Complaint in Intervention is numerous pages long, resulting from the inclusion of a large quantity of irrelevant material, it fails in multiple respects to set forth the conduct allegedly giving rise to false claims with the particularity required by Rule 9(b).

Rule 9(b) requires that a party pleading fraud "must state with particularity the circumstances constituting fraud." As the Eighth Circuit has made clear for FCA cases, "Rule 9(b)'s 'particularity requirement demands a higher degree of notice than that required for other claims,' and 'is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations.'" *Joshi*, 441 F.3d at 556 (quoting *United States ex rel. Costner*

*v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003)). In particular, the complaint must plead facts including "the time, place and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them and what was obtained as a result." *Wivell v. Wells Fargo Bank, N.A.*, 756 F.3d 609, 618 (8th Cir. 2014) (quoting *Joshi*, 441 F.3d at 556); *Dunn*, 739 F.3d at 420. Put another way, the complaint must identify the "who, what, where, when, and how" of the alleged fraud.  *Joshi*, 441 F.3d at 556. Otherwise, it deprives Defendants of the notice a complaint is to provide so that a defendant may guide its discovery efforts and prepare its defense when accused of fraud.

Though the Government attempts to allege that every claim submitted by Defendants is fraudulent because of their alleged taint from an AKS violation, Rule 9(b) also requires the Government to "provide some representative examples of [Defendants'] fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors." *Dunn*, 739 F.3d at 420 (quoting *Joshi*, 441 F.3d at 556). The submission of a "claim" is an essential element of causes of action under § 3729 (a)(1)(A) and(B). *See United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002); *United States ex rel. Moore v. GlaxoSmithKline, LLC*, 2013 WL 6085125, at *3 (E.D.N.Y. Oct. 18, 2013); United *States ex rel. Blundell v. Dialysis Clinic, Inc.*, 2011 WL 167246, at *10–12 (N.D.N.Y January 19, 2011). As articulated by the First Circuit in *United States ex rel. Karvelas v. Melrose–Wakefield Hospital*, 360 F.3d 220, 232 (1st Cir. 2004), *abrogated in part by Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008), a plaintiff must plead both the particular details of a fraudulent scheme and "details that *identify particular false claims for payment* that were

submitted to the government." (Emphasis added). Under this rule, both the fraudulent scheme and the submission of false claims must be pled with a high degree of particularity.[1]

The Eighth Circuit has clearly recognized that compliance with Rule 9(b) is critical to protecting the rights of a defendant accused of fraud. *Joshi, 441 F.3d at 556.* Here, it is even more critical than the ordinary FCA case since the Complaint not only alleges fraud but, in fact, alleges violation of a criminal statute, and because the Government has kept this case under seal for 2 ½ years while it has conducted extensive investigation and one-sided discovery. Such delay in making the Complaint public has already put the Defendants at a great disadvantage. Defendants are further prejudiced by the Government's disregard for the requirements of Rule 9(b), which leaves Defendants guessing as to what the fraud claims really are.

### A.    Allegations That Companies A And B Gave Illegal Remunerations To Defendants

At the heart of the alleged false claims are two purportedly illegal remuneration schemes: 1) remuneration from spinal implant companies in return for purchases of spinal implants; and 2) remuneration from DS Medical to Dr. Fonn in return for purchases of spinal implants through DS Medical. Yet, the details of both alleged schemes are completely missing from the Complaint. As to the alleged illegal remuneration from the spinal implant companies, though the Complaint is 22 pages long with over 100 paragraphs, there are only two paragraphs in the entire Complaint which make any reference to any possible remuneration from Companies A or B. Paragraph 59 alleges that:

---

[1] The heightened pleading standard of Rule 9(b) also applies to state common law claims where those claims are premised on a defendant's underlying alleged fraudulent conduct, including the submission of fraudulent claims to government programs. *See O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991); *Karvelas*, 360 F.3d at 228 (1st Cir. 2004); *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y.2010).

> [M]anufacturer B raised DS Medical's commission rate to 50%, and also agreed
> to pay a monthly "commission enhancement of" of $1700 a month" ….[And]
> [t]he reason spinal implant manufacturer B was willing to pay a 50% commission
> to DS Medical was because it had been led by Dr. Fonn and [Ms.] Seeger to
> believe that Dr. Fonn's choice of implants and other devices was directly related
> to spinal manufacturer B's agreement to pay a higher commission rate to DS
> Medical.

The only other reference to alleged remuneration involving the spinal implant companies is

found in the charging paragraph for Count II, paragraph 87:

> Dr. Fonn, [Ms.] Seeger, and DS Medical knowingly and willfully solicited and
> received remuneration (including any kickbacks, bribe, or rebate) directly or
> indirectly, overtly or covertly, in cash or in kind in [sic] from spinal implant
> companies A and B.

### 1.  Allegations, Or Lack Thereof, Related To Company A

First, as to company A, the Government makes no attempt to offer any particularity

whatsoever regarding the provision of an alleged illegal remuneration. Paragraph 87, the only

applicable paragraph, makes a mere conclusory statement of illegal remunerations coming from

Company A, but provides no hint as to what the remuneration is alleged to be.  Rather, Paragraph

87 alleges the remuneration is either a "kickback" **or** a "bribe" **or** a "rebate" but does not say

which one. Likewise, it alleges the remuneration was provided either "directly **or** indirectly" and

"overtly **or** covertly" without a scintilla of information to know what the Government is talking

about.  (Emphasis added). The Complaint does not identify any specific type of remuneration at

all. It does not identify any individual from company A who allegedly participated in the giving

of the unidentified remuneration. It provides no dates or times as to when the remuneration was

given. The Complaint literally provides no information at all for Defendants to defend

themselves. There can be no serious dispute that as to alleged illegal remuneration from

Company A, Rule 9(b) compliance is completely absent.

### 2.      Allegations, Or Lack Thereof, Relating To Company B

When analyzing the required Rule 9(b) particularity for the alleged illegal remuneration from company B, the Complaint does not fare much better. Paragraph 59 claims that "manufacturer B raised DS Medical's commission rate to 50% "because "it had been led by Dr. Fonn and [Ms.] Seeger to believe that Dr. Fonn's choice of implants and other devices was directly related to spinal manufacturer B's agreement to pay a higher commission rate to DS Medical." However, the Complaint does not in any way identify the alleged individual from company B who was "led to believe" anything nor the individual who "agreed" to raise the commission. Therefore, the required "who" is completely lacking. The Eighth Circuit has specifically held that a Complaint fails to meet the requirements of Rule 9(b) when plaintiff fails to "allege the names of involved individuals." *Wivell*, 756 F.3d at 618.

Second, and possibly more important, the allegation that some unidentified person was "led to believe" that he or she needed to raise the commission paid to DS Medical clearly lacks any particularity. Was something said? Was a note passed? Was body-language read? Was the unidentified person reading between the lines? The Complaint provides no particularity as to one of the most critical allegations relating to a kickback claim. In fact, this is such a vital issue in a kickback case that the fair assumption is that the Government's use of the extremely nebulous and noncommittal phrase "led to believe" was very intentional. Certainly, if the Government was aware that the Defendants had actually said something amounting to a request for some sort of kickback, it would have included that in the Complaint, as required by Rule 9(b). But the Complaint alleges only what some unknown person was "led to believe." On this most important issue, the Complaint provides no particularity as to the "who," the "what," or the "how."  This is exactly where particularity is most critical.

Moreover, the allegation's vagaries are exacerbated by the fact that it accuses both Dr. Fonn and Ms. Seeger of leading this unknown person to believe that a higher commission was needed. Because there is no particularity as to how the company was "led to believe" anything or who at the company was led to believe, adding multiple names to the allegation actually creates an even more nebulous allegation. As the district court noted in *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 899 (D. Minn. 2013), "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant … and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." (additional quotation omitted). "Where there are multiple defendants, a claim must identify which of the defendants made the alleged misrepresentations." *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992); *see also Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 726 (7th Cir. 1998). Here, did both Defendants say something? Did each of them pass a note? Did both of them give off insinuating body-language? Did only one of them speak? Did the other look like he/she was agreeing? When this is the **only** allegation suggesting any solicitation of a kickback, particularity is imperative. Though Dr. Fonn and Ms. Seeger are engaged to be married, they each must put on their own defense and when alleged to have led some unknown person to believe they wanted illegal remuneration, they certainly need to know the particularities as applied to them individually in order to develop a proper defense.

The Complaint does not provide who was supposedly "led to believe," how they were supposedly "led to believe" or what action either Defendant did to lead anyone to believe anything.[2] Rule 9(b) "is intended to enable the defendant to respond specifically and quickly to

---

[2] Additionally, while the paragraph alleges that the commission was "raised" to 50%, it provides nothing to indicate from what rate it was allegedly raised.

6

the potentially damaging allegations," *Joshi*, 441 F.3d at 556. The Complaint does not enable Defendants to do so at all. Therefore, Count II should be dismissed pursuant to Rule 9(b).

This Court should likewise dismiss the conspiracy claim (Count III) and the two equitable claims (Counts IV and V) because they are each based, at least in part, on the alleged illegal remuneration from the spinal implant companies, which, as discussed above, is not pleaded with sufficient particularity. The conspiracy count, Count III, is premised strictly on the alleged kickbacks from spinal manufacturers, not any kickback scheme between Dr. Fonn and Ms. Seeger, and the Rule 9(b) failures therefore completely nullify Count III. Because the equitable claims are premised entirely on the alleged submission of reimbursement claims rendered false by AKS violations, they should be dismissed for the same reasons as the FCA claim. *See, e.g.*, *LaCroix v. U.S. Bank, N.A.*, 2012 WL 2357602, at *7 (D. Minn. June 20, 2012) (dismissing unjust enrichment claim that was premised on an alleged kickback scheme after determining kickback scheme was not adequately pleaded).

Furthermore, Count III sets out that the claim is premised on kickbacks through DS Medical "from multiple spinal manufacturers." But, the "multiple" manufacturers are never identified. Therefore, the "who" required to be identified under Rule 9(b) is also lacking for Count III.

### B. Allegations Of Illegal Remuneration From Ms. Seeger To Her Fiancée, Dr. Fonn

The Complaint likewise fails to state with particularity its allegation of illegal remuneration between Ms. Seeger and Dr. Fonn. Paragraph 71 simply alleges "[a] list of remuneration or things of value that [Ms.] Seeger provided, directly or indirectly, in cash or in kind, to Dr. Fonn is attached hereto as Exhibit 1." Defendants have also attached Exhibit 1 to this

motion to dismiss so that the Court can see that Exhibit 1 is completely lacking in particularity. While it is true that Exhibit 1 is a spread sheet which provides certain information regarding various banking transactions, it completely lacks the information that Defendants would need to know to defend themselves and, thus, the particularity that is required by Rule 9(b).

First, for most of the spreadsheet line items listed in Exhibit 1 there is no indication of what the item is, and for all but one of the line items there is no indication as to how it allegedly benefitted Dr. Fonn (i.e. how it amounted to remuneration). While Exhibit 1 has a memo section, the memo section tells the reader nothing. Multiple entries say no more than there was a debit to a bank account for "Thomasville" or  "OC Construction" or "Bloomfield Landscape" or "Stereo One."  If theses debits to the account were to purchase something, there is no indication as to what was purchased, or, more importantly, how the purchase would relate to or benefit Dr. Fonn. Nowhere in the Complaint itself is there any mention of Thomasville – no indication as to whether it is a location or a person or an entity. Nowhere in the Complaint is there any mention of OC Construction or how it could have benefitted Dr. Fonn. If Ms. Seeger paid for something to be constructed, what was it, where was it, for what purpose, and how did it in any way benefit Dr. Fonn? The same lack of particularity exists related to Stereo One and Bloomfield Landscape. There is no way to defend against these allegations of illegal remuneration because the Complaint provides no particularity as to what these memo entries are supposed to mean or how they supposedly benefitted Dr. Fonn. Not one of these particular entries identifies what the remuneration is or how it benefitted Dr. Fonn. The entire Complaint hinges on the alleged kickbacks to Dr. Fonn, but the Complaint lacks any particularity as to what the alleged kickbacks are and how they benefitted him.

Oddly, the Government's press release alleges more detail than the Complaint in some respects.[3] The press release, attached hereto as Exhibit 12,[4] states that "[t]he commissions paid to D.S. Medical and Ms. Seeger by manufacturers were allegedly used to purchase a house where Dr. Fonn and Seeger cohabitated, **a boat, and airplane**, and various home improvements which they shared." (Emphasis added).  However, while there is a reference to a residence, one could spend an infinite amount of time reading the Complaint and studying Exhibit 1 and never find any hint of a boat or an airplane.  Presumably, the Government simply wrote a significantly inaccurate press release,[5] but, if the Government is actually alleging that Ms. Seeger gave Dr. Fonn an airplane or a boat, then Rule 9(b) requires that such particulars be included in the Complaint. However, Exhibit 1 almost never identifies what supposedly was obtained by the transaction.

The need for particularity is just as glaring when one looks at some of Exhibit 1's more detailed memo entries that actually indicate a specific item to which the bank entry relates. Several entries, for example, indicate the purchase of various pieces of property in the Cape Girardeau area, but the public records (Warranty Deeds) [6]  for each of those properties indicate that the property was titled in the name of Deborah Seeger or Ms. Seeger's business entity, DS Enterprises, not in the name of Dr. Fonn or any entity in which he held any interest. (*See* Exhibits 2-10). Therefore, the Complaint lacks any indication how such property purchases would be remuneration to Dr. Fonn. In fact, for most of these properties, there is no allegation in the Complaint that Dr. Fonn ever utilized the properties, had any connection to them, or even

---

[3] Government press releases, of course, are not supposed to go outside the confines of the Complaint but this one did in several significant respects.
[4] Courts are permitted to consider public records when considering motions to dismiss. *Stahl v. U.S. Dep't of Agric.,* 327 F.3d 697, 700 (8th Cir. 2003)
[5] Ms. Seeger has never purchased an airplane.
[6] Courts are permitted to consider public records when considering motions to dismiss. See Fn. 4.

ever step foot in them at all. For one commercial property, Paragraph 26 alleges that Ms. Seeger "acquired some commercial real estate and later sold it to Dr. Fonn." But, there is no allegation as to which of the properties this allegation relates, and no allegation as to when the sales to Dr. Fonn took place. Rather, Exhibit 1 merely lists the dates on which certain properties were bought by Ms. Seeger and gives no indication that any of the properties were then sold to Dr. Fonn. Under the facts set out in the Complaint, the purchase itself of commercial real estate properties (of which there are several in Exhibit 1) by Ms. Seeger cannot be remuneration to Dr. Fonn. If paragraph 26 is suggesting that the later sale of certain properties to Dr. Fonn is remuneration, then clearly there is a lack of particularity because: 1) the suggestion is well hidden, if not totally absent; 2) there is no indication as to when or where or at what price the sale took place; and 3) there is no indication how a sale of property would amount to remuneration to Dr. Fonn (Paragraph 26 does not in any way allege that Ms. Seeger sold the property at any sort of discounted price). If this could possibly constitute illegal remuneration to Dr. Fonn, then particularity is necessary to identify what makes it so.

Similarly, the very first entry in Exhibit 1 is an April 30, 2009 debit to the bank account for "Purchase of 1533 Helmsdale (their residence)." This entry provides no facts to set out why the purchase of a home by Ms. Seeger is illegal remuneration. Is the Government claiming this is remuneration to Dr. Fonn because he sold the house to Ms. Seeger? Or, is it claiming that the house was paid for by Ms. Seeger but titled in his name? Or, is it claiming that Ms. Seeger subsequently (six months later) permitted her fiancée to live in her home, and that is illegal remuneration? Defendants are left only to guess as to the substance of the Government's allegation, which is exactly what Rule 9(b) is supposed to prevent.

In fact, public records again establish that Ms. Seeger bought this house from a third party and it is titled in her name only.  (*See* Exhibit 2). The line item, however, alleges that it was the April 2009 purchase which was the "thing of value" provided to Dr. Fonn. When a home is purchased by an individual and titled in her name, if such a purchase is being alleged to be illegal remuneration to Dr. Fonn, then Rule 9(b) requires particularity as to how that purchase benefitted Dr. Fonn.  Though referencing the living arrangement, neither the Complaint nor Exhibit 1 alleges that Dr. Fonn received illegal remuneration by residing in that home. Is the Government claiming Dr. Fonn does not pay his share of living expenses? Such an allegation is nowhere within the Complaint. If the provision of housing – to a life partner - is being alleged as illegal remuneration, the Government needs to spell out with particularity how that could be.

The allegations in the Complaint create identifiable confusion elsewhere in relation to Exhibit 1, which further shouts out for the need for particularity. For instance, paragraph 29 alleges that "since at least June 2008, Dr. Fonn and [Ms.] Seeger have lived together in the same residence, which was purchased with commission payments received by DS Medical." The home listed in Exhibit 1 was not purchased until 10 months later, in April 2009, however, so it is not the same as that listed in paragraph 29. Moreover, because the Complaint alleges that DS Medical did not begin operations (or collect any commissions) until November 2008, the home they lived in during 2008 could not have been purchased with commissions Ms. Seeger had not earned.  (*See* Complaint ¶ 37 ("From the beginning of DS Medical's operations in November 2008 ….") *and* Complaint ¶ 42 ("In December 2008, approximately the first full month of operation for DS Medical ….")).Though Paragraph 29 alleges Defendants resided together in *2008* in a home bought with commissions earned by Ms. Seeger, Paragraph 45, which appears to relate to the 1533 Helmsdale purchase in *2009*, alleges that Dr. Fonn lived at the Helmsdale

address. Is the Government alleging Dr. Fonn lived in two different homes? All of this confusion and contradiction within the Complaint (at the least) demonstrates further the necessity that the allegations of illegal remuneration be pleaded with particularity, and they highlight the lack thereof in the Complaint.[7]

Then, three entries – possibly the most flawed entries of all in Exhibit 1 – indicate that three different payments went for "SEP IRA acct XXXXXXXXX."[8] This account does not belong to Dr. Fonn. It is Ms. Seeger's personal IRA.  Defendants cannot fathom how Ms. Seeger's IRA deposits can be considered remuneration to Dr. Fonn. The Complaint lacks any allegation to identify how this could benefit Dr. Fonn – thereby lacking critically needed particularity. Again, Defendants do not here argue the merits of the case but, rather, assert that the information provided in Exhibit 1 cannot possibly meet the requirements of Rule 9(b).

And there are still more items completely lacking in particularity. One line item in Exhibit 1 alleges that the DS Medical bank account was debited $18,456 for "50% of 2009 Ford F150 XLT, financed $10,000 balance due." The Ford 150 truck happens to be one of the few line items at all referenced in the Complaint itself. However, the reference greatly calls into question any possibility that this could be illegal remuneration which benefitted Dr. Fonn. Rather, Paragraph 27 states, "Dr. Fonn and [Ms.] Seeger **share title** to some assets, **including a truck**."

---

[7] Given that the Government had 2 ½ years to investigate this matter, it is difficult to understand how this confusion of facts occurred. In fact, when one looks closely, multiple paragraphs contradict each other. Paragraph 6 states that DS Medical was formed and operated on or about June 11, 2008 and Paragraph 29 says she bought a residence with DS Medical commissions in June 2008. Yet, Paragraph 45 says she bought a house in April 2009 with commissions and Paragraph 37 says DS Medical began operations in November 2008 (not June) and Paragraph 42 states that December 2008 was DS Medical's first full month of operation. For the record, the attached State of Missouri Certificate of Organization definitely shows that DS Medical was not organized until November 2008. (Exhibit 11). Consequently Paragraphs 6 and 29 cannot be correct. Note: Again, all of this is being presented to further demonstrate the need for particularity. Defendants understand they must wait for summary judgment motions until later.
[8] The Exhibit originally included the entire account number, but Defendants and the Local Rules mandate that such information not be in public documents.

(Emphasis added). Of course, a jointly owned truck where each party paid 50% of the price would not be illegal remuneration – and if it somehow could be, the Complaint does not explain how. The Complaint alleges the truck was "purchased **in part** with commission revenue." (Emphasis added). It does not say that Ms. Seeger paid for all of it. There is no allegation that Dr. Fonn ever drove this truck, let alone drove it over 50% of the time. Consequently, when the memo entry in Exhibit 1 says Ms. Seeger paid 50% of the price and the Complaint says she owned 50% of the truck, Defendants are left clueless as to how such a payment benefitted Dr. Fonn and how it could be a kickback. In other words, the entry is completely lacking in particularity.

Rule 9(b) requires "the **details** of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and **what was obtained as a result,** " *Wivell*, 756 F.3d at 618 (emphasis added), "to enable the defendant to respond specifically and quickly to the potentially damaging allegations," *Joshi*, 441 F.3d at 556. Exhibit 1 fails miserably in that regard.

### C.    Allegations Regarding Certifications

The Complaint's failure to comply with Rule 9(b) extends beyond its lack of particularity on the remuneration issues. Paragraphs 12, 16 and 17 set out the alleged requirements imposed on Medicare providers to annually certify their compliance with laws, including the AKS, as an alleged condition of payment by Medicare. The Government's theory is that, notwithstanding that there is no allegation that any claim is factually false, the certifications together with the kickbacks and the resulting billings create FCA violations. [9]

While Defendants do not concede that this is a viable legal theory and note that the Eighth Circuit has not addressed the issue of whether or in what circumstances submitting a

---

[9] As discussed in the Motion to Dismiss, this theory is not viable with the implementation of §1320-7a (g).

claim to the government that is "tainted" by a prior AKS violation constitutes a false claim under the FCA, *see, e.g.*, *United States ex rel. Thomas v. Bailey*, 2008 WL 4853630, at *7 (E.D. Ark. Nov. 6, 2008), this is how the Government is attempting to argue its case. Consequently, the submission of these certifications is essential to the Government's case. Yet, the allegations related to the submission of certifications is woefully lacking.

Paragraph 17, which relates to certification, merely states, "[o]n June 15, 2009, **and other dates**, Dr. Fonn executed Medicare CMS Form 8551 for MWN." (Emphasis added). It does not specify these "other dates" or indicate whether those other dates are before or after June 2009. (The Exhibits attached to the Complaint specifically allege false claims both before and after June 15, 2009). And there is no allegation that the certifications were ever submitted or to whom they were submitted. This fails to plead fraud with sufficient particularity. *See Joshi*, 441 F.3d at 556 ("As we have explained in discussing the § 3729(a)(1) claims, the Complaint lacks any details relating to the making, using, or submitting of any Certifications and thus fails to plead fraud with particularity."). Merely alleging *why* the certifications were false is insufficient." *United States v. Nelnet, Inc.*, 639 F.3d 791, 799 (8th Cir. 2011). Clearly, the Complaint is lacking the requisite "when," "who," and "how" components of this important part of the allegations.

Likewise, and even more flawed under Rule 9(b), paragraph 18 alleges that hospitals in general also make these certifications, but makes no allegation at all that any hospital utilized by Dr. Fonn specifically did so or when it did so.[10] Certification by the specific hospital submitting the allegedly false claims is critically important as to the billing for the spinal implants because

---

[10] In fact, the Complaint, contrary to Rule 9(b), never identifies a specific hospital connected to Dr. Fonn (rather the Complaint merely refers to "a hospital" or "the hospital" but never says what hospital) or a specific hospital that ever submitted a false claim. Clearly, the "who" is not provided as to false claims allegedly submitted by any hospital.

the Government is attempting to hold Defendants liable for claims submitted by a hospital – not by Dr. Fonn. Dr. Fonn never billed Medicare for spinal implants. (Complaint ¶¶ 16, 18, 19, and 34; Exhibit 2).  "A claim cannot be false merely because the activity underlying the claim was illegal, "[i]t is the false *certification* of compliance which creates liability." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996); *United States ex rel. Rost v. Pfizer, Inc.*, 736 F. Supp. 2d 367, 376 (D. Mass. 2010).

Defendants have filed a motion to dismiss based on the fact that certification of compliance by a hospital is not a certification that the doctors who work in the hospital are all in compliance – the certification relates only to the certifying hospital. However, should that motion be denied, then the Government is attempting to hold Defendants liable for billings by a hospital, and Rule 9(b) certainly requires particularity as to not only what hospital is at issue, but also to the alleged certifications specifically submitted by that hospital. "Under the false certification theory, the Complaint must allege with particularity an actual certification to the government that was a prerequisite to obtaining payment…." *Thompson v. LifePoint Hospitals, Inc.*, 2013 WL 597064, at *4 (W.D. La. Nov. 8, 2013). This includes "identifying facts such as what the certification of compliance stated, who submitted the certification, when and where it was submitted to the government, and how the actual certification was false." *Id.*

Because evidence of an actual false claim is "the *sine qua non* of a False Claims Act violation," *Clausen*, 290 F.3d at 1311, Rule 9(b) requires an FCA complaint to allege "with particularity" the "actual false claims submitted to the government." *Moore*, 2013 WL 6085125, at *5; *see also United States ex rel. Polansky v. Pfizer, Inc.*, 2009 WL 1456582, at *5 (E.D.N.Y. May 22, 2009) ("[A] relator cannot circumscribe the Rule 9(b) pleading requirements by alleging a fraudulent scheme in detail and concluding, that as a result of the fraudulent scheme, false

15

claims must have been submitted."). The same must hold true when the Government asserts that the false claim is based on a false certification.

The Government's allegations of false claims submitted to Medicaid suffer from the same non-compliance with Rule 9(b). Except for the charging paragraphs, paragraphs 20-22 are the only paragraphs which discuss Medicaid. However, those paragraphs make no allegation whatsoever about the submission of certifications related to compliance with the AKS. Without a certification of compliance specifically submitted by the hospital or doctor submitting the Medicaid claims, there is not even an argument of a false claim. Again, "[a] claim cannot be false merely because the activity underlying the claim was illegal, "[i]t is the false *certification* of compliance which creates liability." *Hopper*, 91 F.3d at 1266. While this flaw is also part of Defendants' motions to dismiss pursuant to Rule 12(b), it is relevant here because it exposes a complete lack of particularity as to any allegation of false Medicaid claims.

### D.   The Complaint Fails To Provide At Least Representative Examples of Actual Claims Alleged To Be False

Longstanding precedent from the Eighth Circuit makes very clear the particularity it demands in FCA complaints. "If it alleges a systematic practice of submitting fraudulent claims, the FCA complaint 'must provide *some* representative examples of [the] alleged fraudulent conduct,' specifying 'the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.'" *United States ex rel. Roop v. Hypoguard USA, Inc*., 559 F.3d 818, 822 (8th Cir. 2009) (quoting *Joshi*, 441F.3d at 556-57) (emphasis in original); *Dunn*, 739 F.3d at 420 (stating that the plaintiff "must provide some representative examples of [defendant's] fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors.") (quoting *Joshi*, 441 F.3d at 557).

Last year, the Eighth Circuit, in *In re Baycol Products Litigation*, 732 F.3d 869, 880 (8th Cir. 2013), even more explicitly stated its requirement that a plaintiff must "plead at least some representative examples **of actual reimbursement claims submitted to the government** pursuant to the underlying allegedly fraudulent marketing scheme." (Emphasis added). The Complaint, on the other hand, notwithstanding a 2 ½ year delay by the Government in unsealing the *qui tam* complaint, does not actually provide the identification of one single "actual reimbursement claim submitted to the government."

Though the Government attached two lengthy exhibits to the Complaint which do provide some information related to procedures done by Dr. Fonn, neither exhibit identifies any "actual reimbursement claims submitted to the government." Not one claim number is identified in either exhibit (the "Medicare #" – assigned to a Medicare recipient – and "HICN Standard" are not claim numbers). Dates on which actual claims were submitted to the government are not identified for any claims (for Part B, no dates are provided at all, for Part A claims the exhibits only provide dates of service), and neither exhibit identifies who would have submitted the unidentified claims. In fact, Exhibit 2 doe not even provide the full last name for many of the alleged patients.  The Complaint simply does not comply with the unequivocal mandates of the Eighth Circuit.

The Government has no legitimate justification for failing to identify "actual reimbursement claims submitted to the government." As mentioned previously, the Government has been conducting extensive discovery (while keeping the Defendants in the dark regarding the *qui tam* filing) for 2 ½ years. Moreover, the Eighth Circuit has made it clear that an argument that "Defendants should know the information" does not justify a relaxed application of Rule 9(b). *Joshi*, 441 F.3d at 559 (noting that while "[s]ome courts have recognized in theory that the

particularity requirements of Rule 9(b)  may be relaxed in an FCA *qui tam* action where the information relevant to the fraud is 'peculiarly within the perpetrator's knowledge,'" the Eighth Circuit specifically declined to follow those limited cases) (additional citations omitted). Furthermore, as noted by *Joshi*, courts which have considered a relaxed application of Rule 9(b) have done so only when the missing particularity is "peculiarly" within the defendants knowledge.  441 F.3d at 559; *see, e.g.,  Karvelas*, 360 F.3d at 229 ("[W]e have said that Rule 9(b) pleading standards may be relaxed, in an appropriate case, 'when the opposing party is the only practical source for discovering the specific facts supporting a pleader's conclusion.'") (quoting *Boston & Maine Corp. v. Hampton*, 987 F.2d 855, 866 (1st Cir. 1993)).

Identification of when the claims were submitted and who they were submitted by is clearly not "peculiarly" within Defendants' knowledge. To the contrary, since the claims were allegedly submitted to the Government, the Government should have the easiest access to information regarding their submission. Moreover, as set out in the Complaint, all Part A claims are submitted by hospitals, so Defendants do not have such records at all. *See also Siouxland Energy & Livestock Co-op. v. Gaylor*, 2002 WL 31749490, at *5 (N.D. Iowa Dec. 9, 2002) (rejecting plaintiff's request "to adopt a 'common sense approach' as to whether the pleading is sufficient because . . . [defendant] knows the nature of the claims against it . . . .").

### E.     The Government's Complaint Must Meet A Higher Degree Of Particularity Because Of The Government's Extensive Pre-Filing Investigation

Where, as here, the Government has already taken substantial pre-filing discovery – 2 ½ years' worth – courts have required a higher degree of particularity in pleadings. *See*, *e.g.*, *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987) ("[W]e recognize that the degree of particularity required should be determined in light of such circumstances as whether the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the

pertinent facts."); *Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 57 (2d Cir. 1982) ("[P]laintiffs here have had access to full discovery. . . . The policies underlying Rule 9(b) call upon us to require greater precision than is found in this complaint when full discovery has been had in a prior case."); *United States ex rel. Monda v. Sikorsky Aircraft Corp.*, 2005 WL 1925903, at *5-6 (D. Conn. Aug. 11, 2005) (applying strict interpretation of Rule 9(b) to relator who had three months to examine defendant's records and interview its personnel), *aff'd*, 207 F. App'x 28 (2d Cir. 2006). This principle applies with equal force when the Government is the plaintiff. *See SEC v. Tambone*, 417 F. Supp. 2d 127, 131 (D. Mass. 2006) (granting defendants' motion to dismiss and noting that the government's prior witness and document discovery mandated "rigorous" application of Rule 9(b)'s particularity requirement).

Additionally, as discussed above, the Eighth Circuit has made it clear that an argument that "Defendants should know the information" does not justify a relaxed application of Rule 9(b). *Joshi*, 441 F.3d at As noted by *Joshi*, courts which have considered a relaxed application of Rule 9(b) have done so only when the missing particularity is "peculiarly" within the defendants knowledge.  441 F.3d at 559; *see, e.g., Karvelas*, 360 F.3d at 229 ("[W]e have said that Rule 9(b) pleading standards may be relaxed, in an appropriate case, 'when the opposing party is the only practical source for discovering the specific facts supporting a pleader's conclusion.'") (quoting *Boston & Maine Corp. v. Hampton*, 987 F.2d 855, 866 (1st Cir. 1993)). After 2 ½ years of investigating, nothing is "peculiarly" within Defendants' knowledge.

Because of the grossly inadequate particularity with the Complaint, under Rule 9(b), it should be dismissed.

Respectfully submitted,

Dated:  September 17, 2014                    **DOWD BENNETT LLP**

By:    /s/ James G. Martin
    James G. Martin, #33586MO
    jmartin@dowdbennett.com
    Edward L. Dowd, Jr. #28785MO
    edowd@dowdbennett.com
    James F. Bennett #46826 MO
    jbennett@dowdbennett.com
    Robert Epperson #46430 MO
    repperson@dowdbennett.com

    7733 Forsyth Blvd., Suite 1900
    St. Louis, MO 63105
    Telephone:  (314) 889-7300
    Facsimile:  (314) 863-2111

By:    /s/ Curtis O. Poore
    Curtis O. Poore      #38067MO

    **THE LIMBAUGH FIRM**
    407 N. Kingshighway, Suite 400
    P. O. Box 1150
    Cape Girardeau, MO 63702-1150
    Telephone:  573/335-3316
    Fax:  573/335-0621
    Email: curt@limbaughlaw.com

*Attorneys for Defendants Sonjay Fonn and Midwest Neurosurgeons*

    **CAPES, SOKOL, GOODMAN & SARACHAN, P.C.**
By:/s/ Sanford J. Boxerman
    Sanford J. Boxerman, #37436MO
    7701 Forsyth Boulevard, 12th Floor
    Saint Louis, Missouri  63105
    Telephone:  (314) 505-5470
    Facsimile:  (314) 505-5471
    boxerman@capessokol.com

*Attorneys for Defendants Deborah Seeger
and D.S. Medical*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 17, 2014, a copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system on all counsel of record.

\s\ James G. Martin