UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel. PAUL CAIRNS, et al., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:12CV00004 AGF |
| D.S. MEDICAL LLC; MIDWEST NEUROSURGEONS, L.L.C.; SONJAY FONN, M.D.; and DEBORAH SEEGER, | ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This *qui tam* action, in which the United States has intervened, is brought under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33. The United States claims that Defendants – two individuals and two limited liability companies they formed – violated the FCA by submitting and/or causing others to submit to the United States claims for payment that were false, because they were the result of kickbacks that violated the federal criminal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b. The complaint also asserts common law claims of unjust enrichment and payment under mistake of fact. Now before the Court is Defendants' joint motion to dismiss the case under Federal Rule

of Civil Procedure 12(b)(6).[1] For the reasons set forth below, the motion to dismiss shall be denied.

## BACKGROUND

The complaint (in intervention) alleges the following. Defendant Sonjay Fonn, D.O., is a physician who, from November 2008 to March 2012, had privileges to perform spinal implant surgeries at a hospital in Missouri. Defendant Midwest Neurosurgeons, L.L.C. ("MWN") is a Missouri limited liability company formed by Fonn in December 2008, and operated by him, with himself as the sole physician employee. In accordance with typical practice, Fonn would inform the hospital which implant devices he wished to use in his surgeries. The hospital would arrange to purchase the requested devices through a distributor. If a patient was a Medicare or Medicaid beneficiary, the hospital would seek and receive reimbursement for the cost of the implant devices by filing claims with Medicare (Part A) or Medicaid. In addition, Fonn, acting through MWN, submitted claims to, and was paid by, Medicare (Part B) and Medicaid for his professional services associated with such surgeries.

In June 2008, Defendant Deborah Seeger, with whom Fonn has had a long-term personal relationship and to whom, since at least June 2008, he is engaged to be married, formed Defendant D.S. Medical, LLC ("DSM"), a Missouri limited liability company, for the distribution of spinal implant devices. DSM would receive a commission from the

---

[1] Pursuant to an Order entered on October 6, 2014 (Doc. No. 75), this action is currently stayed with the exception of Defendants' present motion to dismiss, and another joint motion to dismiss under Rule 9(b).

device manufacturers – in particular and hereinafter, "Manufacturer B" – for their devices that DSM distributed. The complaint alleges that DSM rented space from MWN, and that MWN and DSM had "'shared' employees and contractors." Further, according to the complaint, after its formation, Fonn used DSM as his "virtually exclusive source" of spinal implant devices for his patients, and he began using more such devices in each of his surgeries and performing more spinal implant surgeries than he did before.

The complaint further alleges the following. Fonn was DSM's only physician/customer, and "Fonn and Seeger set up and operated [DSM] together as a joint venture, using it as a common enterprise for their mutual economic benefit." Fonn and Seeger share title to assets, including a truck and recreational vehicle, that were purchased in part with DSM's commission revenue from Manufacturer B, and since at least June 2008, Fonn and Seeger have shared a residence that Seeger purchased "using a [DSM] bank account . . . using her commission revenue from [DSM]."

To be eligible for payment by Medicare for the costs of the implant devices, the hospital was required to certify that it agreed to abide by Medicare laws and regulations and that it understood that payment of a claim by Medicare was conditioned upon both the claim and the underlying transaction complying with such laws and regulations, including the AKS. Fonn, on behalf of MWN, signed similar certifications to be eligible for reimbursement by Medicare for his services related to the surgeries.

The complaint sets forth, in three counts, the Government's theories of how Defendants' above-described conduct violated the FCA. Count I asserts that Fonn,

personally and through MWN, solicited and received remuneration from Seeger and DSM in return for ordering/causing the hospital to purchase implant devices through DSM, for which payment was made by Medicare and/or Medicaid; that Seeger and DSM paid remuneration to Fonn and MWN to induce Fonn to order implant devices through Seeger and DSM, for which payment was made by Medicare and/or Medicaid; and that all four Defendants thereby,

> caused false claims for payment to be presented to the United States in violation of 31 U.S.C § 3729(a)(1)(A) when they submitted and caused the submission of claims to Medicaid and Medicare for spinal implant devices and related services by the hospital and MWN as a result of kickbacks and/or illegal remuneration in violation of the [AKS].

(Doc. No. 26 at 17-18.) A list of claims (billed to Medicare Part A, Medicare Part B, and Medicaid) that were allegedly false under this theory was submitted as an exhibit to the complaint.

In Count II, the alleged illegal remunerations are characterized differently – not as monies exchanged between the two sets of Defendants, but rather as the commissions paid by Manufacturer B to DSM. This count asserts that Fonn, Seeger, and DSM, individually and collectively, solicited and received commissions/remuneration from the Manufacturer B in return for ordering, or having the hospital order, implant devices from Manufacturer B, and that all four Defendants thereby caused false claims for payment to be presented to the United States, as quoted above in the context of Count I. A list of claims that were allegedly false under this theory (billed to Medicare Part A and to Medicare Part B) was submitted as another exhibit to the complaint.

4

Count III asserts that the four Defendants conspired to violate the FCA as asserted in Count II. Counts IV and V assert common law claims. Count IV seeks recovery from Fonn and MWN for monies paid them (for reimbursement of professional services) by Missouri and the United States as a result of mistaken understanding of fact, that is, as a result of a mistaken belief that the relevant claims and certifications were not false. Count V seeks recovery from all four Defendants on the theory that they were unjustly enriched by obtaining government funds to which they were not entitled.

Defendants argue that Counts I, II, and III fail to state claims under the FCA because (1) the complaint fails to allege that the AKS violations were the "but for" causation of the alleged false claims, that is, that but for the alleged kickbacks, Fonn's utilization of the subject implant devices and related services would have been different; (2) as there is no allegation of medically unnecessary procedures conducted by Fonn, the Medicare Part B claims for his services do not include "services resulting from a violation" of the AKS, and therefore are not false claims; (3) the complaint only suggests the "possibility" not the "plausibility" that Seeger induced Fonn to purchase products through DCM in return for remuneration; and "in combination with judicial experience and common sense," provides "the likely explanation" for why Fonn directed business to Seeger, and why Seeger shared assets with Fonn, namely, their personal relationship; (4) the Government's theory of the alleged kickback scheme improperly expands on the prohibition in the Stark Act, 28 U.S.C. § 1395nn, against married people engaging in referrals as alleged here, and improperly invades Seeger's and Fonn's privacy rights; and

5

(5) inasmuch as the hospital certifications only certified that the hospital complied with the AKA, not that Defendants did, the certifications were not false and thus Defendants did not cause the hospital to submit false claims.

Defendants argue that Count IV, payment due to mistake of fact, should be dismissed as to Seeger, DSM, and Fonn, because the Government does not allege that it made a payment to any of these parties. Defendants also argue that the Government is not entitled to collect any payments made by the State of Missouri under the Medicaid program. With respect to Count V for unjust enrichment, Defendants again argue that the only payments the Government made were to MWN, and as these payments were for physician services not the implant devices, this Count fails as a matter of law. Furthermore, Defendants argue that the Government's failure to specifically allege what monies constituted unjust enrichment, as well as the existence of an express contract between the Government and MWN, defeat this claim. Finally, Defendants argue that both Counts IV and V should be dismissed because the complaint does not identify whether they are brought under federal or state common law.

## **DISCUSSION**

Rule 8(a) of the Federal Rules of Civil Procedure provides that to state a claim, a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, states "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, at the pleading stage a plaintiff must show that success on the merits is more than a "sheer possibility." *Id*. This standard "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id*.

The FCA provides, in pertinent part:

Any person who –

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;

\*   \*   \*

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

\*   \*   \*

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the Government sustains because of the act of that person . . . .

31 U.S.C. § 3729(a).

The AKS provides in relevant part as follows:

[W]hoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind –

> (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>
> (B) in return for purchasing, leasing, ordering or arranging for or recommending purchasing, leasing or ordering any good, facility,

service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony . . .

42 U.S.C. § 1320a-7b(b)(1).

The AKS specifically provides that a claim submitted to the government for reimbursement is false or fraudulent for purposes of the FCA where the claim "includes items or services resulting from a violation" of the AKS. 42 U.S.C. § 1320a-7b(g). Courts have held that this amendment is not retroactive, but that it serves to clarify the AKS, not alter it. *See United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 311 n.19 (3d Cir. 2011); *United States v. Woods*, No. 11 CR 595, 2013 WL 2636108, at *2-3 (N.D. Ill. June 12, 2013). Indeed, neither party contends that it does not apply to this case.

"By enacting Section 1320a–7b(g), Congress made clear that the fact that the certifications were made by an innocent party submitting a claim without knowledge of an AKS violation did not remove the taint of falsity from the certifications[.]" *United States ex rel. Kester v. Novartis Pharms. Corp.*, ___ F. Supp. 2d ___, 2014 WL 4230386, at *10 (S.D.N.Y. 2014).

Defendants base their "but for" argument on the statutory term "resulted from" in the AKS. They rely heavily on the recent Supreme Court case *Burrage v. United States*, 134 S. Ct. 881 (2014), in which the Court construed a section of the Anti-Drug Abuse Act providing for a sentencing enhancement when "death or serious bodily injury results

from the use of [the distributed illegal] substance." The Court held that the term "results from" imposes a requirement of proof that the harm would not have occurred but for the defendant's conduct. *Id*. at 887-88. The Court explained, "[w]here there is no textual or contextual indication to the contrary, courts regularly read phrases like 'results from' to require but-for causality." *Id*. at 888. Thus, according to Defendants, the claims submitted by the hospital to Medicare and Medicaid for reimbursement in this case would be false only if they were for items (or services) that would not have been purchased but for Defendants' kickback scheme. However, in this case the complaint alleges that Fonn specifically chose the devices manufactured by Manufacturer B for the purpose of benefitting from the kickback scheme. This is tantamount to the Government alleging that Fonn would not have chosen those particular devices but for the kickback scheme, and is sufficient to state a claim under the FCA. *See United States ex rel. Hutcheson v. Blackstone Med., Inc*., 647 F.3d 377 (1st Cir. 2011) (holding that allegations that physicians received kickbacks from a medical device manufacturer in exchange for the use of the devices in surgery, were sufficient to state a claim that the hospital's and physicians' claims for Medicare payment were false under the FCA).

Defendants' argument that the allegations of improper remuneration merely set forth a scheme that was "possibly" illegal, but not conduct by the Defendants that is "plausibly" illegal is not persuasive. The Court does not agree with Defendants that the facts as alleged establish "the inescapable conclusion" that inducement and remuneration here as between the two sets of Defendants was merely the product of Fonn and Seeger's

close personal relationship. While Fonn's financial relationship with Seeger and DSM in connection with the implant devices is not per se improper, as Defendants concede it would have been under the Stark Act, 28 U.S.C. § 1395, had they been married, their personal relationship does not conclusively shield them here.

Defendants' reliance on *United States ex rel. Thomas v. Bailey*, No. 4:06CV00465 JLH, 2008 WL 4853630 (E.D. Ark. Nov. 6, 2008), for the proposition that the hospital's certifications could not be said to be false even if Defendants violated the AKS is unavailing. The Court agrees with the Government that the better view, which is expressed in the majority of cases, is that compliance with the AKS is a condition of payment by Medicare and Medicaid, and thus claims seeking payment for items or services that would not have been purchased or performed but for kickbacks are "false" claims; and further, that a non-submitting party may be liable for causing the submission of such a false claim by another party, and that this liability is not conditioned on whether the submitting party knew about the non-submitting party's unlawful conduct. *See Hutcheson*, 647 F.3d at 393; *Wilkins*, 659 F.3d at 309.

The Eighth Circuit has recognized that noncompliance with regulatory requirements that are "a precondition to" payment by the government, rather than "merely a condition of continuing participation in a government program" could "result[] in a materially false claim [under the FCA] for a specific government payment." *United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist., No. 49-5*, 688 F.3d 410, 414-15 (8th

Cir. 2012) (citing cases including *Wilkins*, 659 F.3d at 306-11).  And this Court believes that the Eighth Circuit would hold accordingly here.

The Court also rejects Defendants' argument that even if the purchase of the implant devices were a result of kickbacks, Fonn's professional services were not.  The professional services for which MWS sought reimbursement in this case were to implant the very devices for which Fonn allegedly accepted kickbacks.  These services were thus the result of the same financial incentives that colored Fonn's selection of Manufacturer B's and involve the same "underlying transaction," such that Fonn/MWS are not entitled to payment by Medicare and Medicaid for those services.  *See Hutchenson*, 647 F.3d at 393-94.

With respect to the two common law claims (Counts IV and V), the Government's response to the motion to dismiss clarifies that these are brought under federal common law.  These claims are "available to the United States and are independent of statute" and are governed by federal common law.  *United States ex rel. Heesch v. Diagnostic Physicians Group, P.C.*, No. 11–0364–KD–B, 2014 WL 2154241, at *11 (S.D. Ala. May 22, 2014) (quoting *United States v. Mead*, 426 F.2d 118, 124 (9th Cir. 1970)); *see also United States v. Applied Pharm. Consultants, Inc.*, 182 F.3d 603, 608 (8th Cir. 1999).

To prevail on its claim of mistaken payment, the Government must show that it made payments under an erroneous belief which was material to the decision to pay.  *Heesch*, 2014 WL 2154241, at *11.  To state a claim of unjust enrichment under federal common law, the Government must show that "(1) a benefit was conferred, (2) the

11

recipient was aware that a benefit was received and; (3) under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *United States v. R.J. Zavoral & Sons, Inc.*, No. 12–668 (MJD/JJK), 2014 WL 5361991, at *16-17 (D. Minn. Oct. 21, 2014). Under either theory, the Government may seek repayment from any third parties to whom the funds flowed, not just the party to which they were directly given. *United States v. Bellecci*, No. CIV S-05-1538 LKK GGH PS, 2008 WL 802367, at *5 (E.D. Cal. Mar. 26, 2008) (citing *Mead*, 426 F.2d at 124-25).

The Court concludes that the allegations that Medicare and Medicaid mistakenly paid claims under the belief that Fonn and MWN were in compliance with the law, and that but for this mistaken belief they would have denied the claims, are sufficient to survive a motion to dismiss. It is immaterial which of these two Defendants received the funds directly from the Government. Moreover, because a portion of each Medicaid payout was taken from federal Treasury funds, the Government is entitled to make a claim for the return of these monies as well. *See United States v. Lahey Clinic Hosp.*, 399 F.3d 1, 15-16 (1st Cir. 2005). The Government also sufficiently alleges that all Defendants were unjustly enriched through the Medicare and Medicaid payments.

To the extent that any relief requested by the Government's FCA and common law claims is duplicative, "the [G]overnment will not be allowed to recover twice, but may defer its election of remedy until trial on the merits." *See United States v. United Techs. Corp.*, 255 F. Supp. 2d 779, 785 (S.D. Ohio 2003).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss the Complaint in Intervention for failure to state a claim is **DENIED**. (Doc. No. 64.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 11th day of February, 2015.