UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel. PAUL CAIRNS, et al., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:12CV00004 AGF |
| D.S. MEDICAL LLC; MIDWEST NEUROSURGEONS, L.L.C.: SONJAY FONN, M.D.: and DEBORAH SEEGER, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This *qui tam* action, in which the United States has intervened, is brought under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33. The United States claims that Defendants – two individuals and two limited liability companies they formed – violated the FCA by submitting and/or causing others to submit to the United States claims for payment that were false, because they were the result of kickbacks that violated the federal criminal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b). The complaint also asserts common law claims of unjust enrichment and payment under mistake of fact. Now before the Court is Defendants' joint motion to dismiss the case

under Federal Rule of Civil Procedure 9(b) for failure to allege fraud with sufficient particularity.[1]  For the reasons set forth below, the motion to dismiss shall be denied.

**BACKGROUND**

The complaint (in intervention) alleges the following.  Defendant Sonjay Fonn, D.O., is a physician who, from November 2008 to March 2012, had privileges to perform spinal implant surgeries at a hospital in Missouri.  Defendant Midwest Neurosurgeons, L.L.C. ("MWN") is a Missouri limited liability company formed and operated by Fonn in December 2008, with Fonn as the sole physician employee.  In accordance with typical practice, Fonn would inform the hospital which implant devices he wished to use in his surgeries.  The hospital would arrange to purchase the requested devices.  If a patient was a Medicare or Medicaid beneficiary, the hospital sought and received reimbursement for the cost of the implants by filing claims with Medicare (Part A) or Medicaid.  In addition, Fonn, acting through MWN, submitted claims to, and was paid by, Medicare (Part B) and Medicaid for his professional services associated with such surgeries.

In June 2008, Defendant Deborah Seeger, with whom Fonn has had a long-term personal relationship and to whom, since at least June 2008, he is engaged to be married, formed Defendant D.S. Medical, LLC ("DSM"), a Missouri limited liability company, for the distribution of spinal implant devices exclusively to Fonn.  DSM would receive a commission from the device manufacturers – in particular and hereinafter, "Manufacturer

---

[1] Pursuant to an Order entered on October 6, 2014 (Doc. No. 75), this action is currently stayed, now with the exception of Defendants' present motion to dismiss.

B" – for their devices that DSM distributed. The complaint alleges that DSM rented space from MWN, and MWN and DSM had "'shared' employees and contractors." Further, according to the complaint, after its formation, Fonn used DSM as his "virtually exclusive source" of spinal implant devices for his patients, and he began using more such devices in each of his surgeries and performing more spinal implant surgeries than he did before.

The complaint further alleges the following. Fonn was DSM's only physician/customer, and "Fonn and Seeger set up and operated [DSM] together as a joint venture, using it as a common enterprise for their mutual economic benefit." In October and November 2009, Fonn and Seeger allegedly met with representatives of Manufacturer B, and solicited an increase in commissions paid to DSM in exchange for Fonn's use of Manufacturer B's implants. Following these meetings, Manufacturer B raised DSM's commission rate to 50% and agreed to pay an additional "commission enhancement" of $1700 per month to DSM.

The complaint alleges that Fonn and Seeger share title to assets, including a truck and recreational vehicle, that were purchased in part with DSM's commission revenue from Manufacturer B, and since at least June 2008, Fonn and Seeger have shared a residence that Seeger purchased "using a [DSM] bank account . . . using her commission revenue from [DSM]."

To be eligible for payment by Medicare for the costs of the implant devices, the hospital was required to certify that it agreed to abide by Medicare laws and regulations

and that it understood that payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with such laws and regulations, including the AKS. Fonn, on behalf of MWN, signed similar certifications, including one on June 15, 2009, to be eligible for reimbursement by Medicare for his services related to the surgeries.

The complaint sets forth, in three counts, the government's theories of how Defendants' above-described conduct violated the FCA. Count I asserts that Fonn, personally and through MWN, solicited and received remuneration from "Seeger and DSM" in return for ordering/causing the hospital to purchase implant devices through DSM, for which payment was made by Medicare and/or Medicaid; that Seeger and DSM paid remuneration to Fonn and MWN to induce Fonn to order implant devices through Seeger and DSM, for which payment was made by Medicare and/or Medicaid; and that all four Defendants thereby:

> caused false claims for payment to be presented to the United States in violation of 31 U.S.C § 3729(a)(1)(A) when they submitted and caused the submission of claims to Medicaid and Medicare for spinal implant devices and related services by the hospital and MWN as a result of kickbacks and/or illegal remuneration in violation of the [AKS].

(Doc. No. 26 at 17-18.) A list of claims (billed to Medicare Part A, Medicare Part B, and Medicaid) that were allegedly false under this theory was submitted as an exhibit to the complaint.

In Count II, the alleged illegal remuneration scheme violating the AKS is characterized differently – not as monies exchanged between the two sets of Defendants,

4

but rather as the commission paid by Manufacturer B to DSM. This count asserts that Fonn, Seeger, and DSM, individually and collectively, solicited and received commissions/remuneration from the Manufacturer B in return for ordering, or having the hospital order, implant devices from the manufacturer, and that all four Defendants thereby caused false claims for payment to be presented to the United States, as quoted above in the context of Count I. A list of claims that were allegedly false under this theory (billed to Medicare Part A and to Medicare Part B) was submitted as another exhibit to the complaint.

Count III asserts that the four Defendants conspired to violate the FCA as asserted in Count II. Counts IV and V assert common law claims. Count IV asserts that payments to Fonn and MWN by Missouri and the United States were the result of mistaken understandings of fact. Count V claims that all four Defendants were unjustly enriched by obtaining government funds to which they were not entitled.

In their present motion to dismiss, Defendants argue that the complaint fails to state a claim with the particularity required by Federal Rule of Civil Procedure 9(b) because the complaint (1) provides insufficient information as to what constitutes illegal remuneration; (2) does not support its allegations that employees of Manufacturer B were led to believe that a kickback was expected; (3) does not specify what the Government considers remuneration from Seeger to Fonn; (4) only identifies a single certification that was allegedly false; (5) does not identify any specific hospital which Fonn caused to file

false claims; (6) does not identify any false certifications for Medicaid claims; and (7) does not identify specific Medicare or Medicaid claim numbers which are false.

## **DISCUSSION**

Rule 9(b) provides that in alleging fraud a party must state with particularity the circumstances constituting fraud. "Because the FCA is an anti-fraud statute, complaints alleging violations of the FCA must comply with Rule 9(b)." *United States ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 916 (8th Cir. 2014) (citation omitted). To satisfy Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result . . . . In other words, the complaint must identify the who, what, where, when, and how of the alleged fraud. *Id.* However, Rule 9(b) "was never meant to require a plaintiff to set forth every factual detail supporting its claim," and where a defendant is able to "mount a vigorous defense" at the motion to dismiss stage, the pleadings are sufficiently specific. *United States ex rel. Schell v. Bluebird Media, LLC*, No. 12–cv–04019, 2013 WL 3288005, at *3 (W.D. Mo. Jun. 28, 2013) (citations omitted); *see also United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006).

The FCA, in relevant part, imposes liability on those who present false claims, or cause false claims to be presented, to the government for payment or approval; or conspire to defraud the government. 31 U.S.C. § 3729(a)(1)–(3). A claim that violates

6

the AKS, in that it includes items or services that were referred or recommended in exchange, directly or indirectly, for remuneration, is "false" for the purposes of the FCA. 42 U.S.C. §§ 1320(a)-7b(b), 1320(a)-7b(g). "A prima facie case under the [FCA] requires that (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *United States ex rel. Raynor v. Nat'l Rural Utils. Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (citations omitted).

The Court has carefully reviewed the Government's complaint and concludes that it does meet the standards of pleading with particularity set forth in Rule 9(b). The Government alleges the requirement to certify that Medicare claims are in compliance with the AKS and alleges that because Fonn was receiving kickbacks, each of these certifications Defendants submitted or caused to be submitted in the relevant time period were false. The Government also provides an example of one such certification signed by Fonn. The complaint states clearly that Defendants received "illegal remuneration" in the form of shares of the commissions paid to DSM for the spinal implant devices, and alleges an ongoing practice of these commissions being shared among Defendants. The Government has provided bank account entries tracing the alleged remuneration from DSM and Seeger to Fonn. These averments identify the "who, what, where, when, and how" of the alleged scheme and adequately place Defendants on notice of what they are being accused of doing.

Moreover, the complaint identifies particular meetings between device Manufacturer B, Fonn, and Seeger, in which alleged kickback agreements were reached, and alleges that Fonn selected which implants to use in his surgeries based on kickbacks resulting from these meetings.

Defendants' reliance on *In re Baycol Products Litigation*, 732 F.3d 869 (8th Cir. 2013), is unpersuasive. That case affirmed the dismissal of an FCA claim which alleged that all health insurance reimbursement claims for a certain drug were false due to the marketing of the drug, because the complaint did not specify even a single relevant prescription or claim. Here, the Government's complaint includes exhibits which detail specific surgeries for specific Medicare and Medicaid patients in which allegedly false claims were submitted.[2] This is more than enough to enable Defendants to prepare an adequate defense. *See e.g.*, *United States ex rel. Kester v. Novartis Pharms. Corp.*, No. 11 Civ. 8196(CM), 2014 WL 4401275, at *11 (S.D.N.Y. Sept. 4, 2014) (holding that an FCA complaint including lists of items/services provided, reimbursement amounts, government programs with which claims were filed, and time of the claims that allegedly violated the AKS, satisfied Rule 9(b)); *United States ex rel. Heesch v. Diagnostic Physicians Grp., P.C.*, Civil Action No. 11–0364–KD–B, 2014 WL 2154241, at *6 (S.D. Ala. May 22, 2014) (holding that an FCA complaint including a list of provider names,

---

[2] The Court notes that the exhibits to the complaint were redacted to protect the identities of Fonn's patients, but considers this motion to dismiss in light of the unaltered copies provided by the Government under seal, which specify both patient identities and the specific Medicare/Medicaid claims in question.

claim numbers/dates, the procedures, and places/costs of services that allegedly violated the AKS was sufficiently particular to satisfy Rule 9(b)).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss the complaint (in intervention) for failure to allege fraud with sufficient particularity is **DENIED**. (Doc. No. 65.)

_____
 AUDREY G. FLEISSIG
 UNITED STATES DISTRICT JUDGE

Dated this 12th day of February, 2015.