UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. PAUL CAIRNS, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:12CV00004 AGF |
| | ) | |
| D.S. MEDICAL, L.L.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This qui tam action is before the Court on Defendant Dr. Sonjay Fonn's motion (Doc. No. 139) to compel production of Reports of Interview of five interviews conducted in 2010 by the government in connection with a criminal investigation in Texas. The government asserts the investigative (law enforcement) privilege. For the reasons set forth below, the motion to compel will be granted.

## BACKGROUND

The qui tam complaint in the present action was filed on January 5, 2012, claiming, inter alia, that Dr. Fonn violated the False Claims Act, 31 U.S.C. §§ 3729-33, by submitting to the Medicare and Medicaid programs false claims for reimbursement, for his services in performing spinal surgeries between December 2008 and March 2012, and for the purchase of implant devices, from manufacturers including Verticor, LTD, used in those surgeries. The claims for reimbursement were allegedly false because they were the result of kickbacks that violated the federal criminal Anti-Kickback Statute. On June 30, 2014, the government filed its notice of intention to

intervene in the case.  On September 18, 2014, the government filed criminal charges against Defendants, arising out of the same conduct involved in this civil case, and the Court thereafter granted Defendant's motion to stay the civil case in light of the pendency of the criminal case.  On December 15, 2015, the government dismissed the criminal charges, and the stat in this case was lifted on December 17, 2015.

Dr. Fonn seeks production, in the present case, of Reports of Interview of interviews of five individuals conducted by the government in 2010 in connection with a criminal investigation in Texas of an alleged kickback scheme involving Verticor and its owner, Todd Stanaford.  The five individuals are Stanaford and four other employees of Verticor.  The Texas allegations were that consulting agreements between Verticor and ten surgeons, not including Dr. Fonn, constituted kickbacks paid to the surgeons for using Verticor spinal implants.  No criminal charges were ever brought as a result of the Texas investigation, and it is undisputed that that investigation has been closed for several years.  In its Rule 26 disclosures, the government has disclosed the names of the five individuals whose interview reports Dr. Fonn seeks, as witnesses who may be called in the present case.   It is undisputed that each of the interviews at issue was conducted under a proffer agreement.

During the now dismissed criminal case against Defendants, the government turned over the 15-page affidavit in support of the search warrant executed on Verticor's facilities on February 1, 2010, as part of the Texas investigation; the affidavit included information provided by two of the five individuals whose interviews are now

at issue. Also during the criminal case against Defendants, the government sent Defendants an email dated May 22, 2015, with a brief synopsis of the Texas interviews with the Verticor employees.

In response to Defendants' request for the production of the Reports of Interview, the government maintained that the reports were protected by the investigative privilege, whereupon Dr. Fonn filed the present motion to compel production of the Reports of Interview.

## **ARGUMENTS OF THE PARTIES**

Dr. Fonn argues that circumstances indicate that in their interviews, none of the five Texas witnesses stated that Dr. Fonn was involved in a kickback scheme with Verticor, and thus what these witnesses were asked, what they said, and what they did not say is important to possible impeachment of the witnesses, if they make such allegations against Dr. Fonn now. Dr. Fonn points out that the interviews were conducted at a time when, according the complaint itself, he was in an adversarial position with Verticor, such that the five Verticor employees would have had no motivation to protect him. He argues further that what the four witnesses other than Stanaford might have said about Stanaford could provide evidence to impeach Stanaford. The government has not disputed Dr. Fonn's assertion that Stanaford will be a key witness against Defendants in the present case. Thus, according to Dr. Fonn, the Reports of Interview could lead to discoverable evidence. He further argues that he cannot obtain the equivalent of the withheld materials by deposing the five individuals

3

now, because the interviews took place in 2010, at a time more contemporaneous with the kickbacks alleged in the present case, and thus have unique value.

Dr. Fonn argues that because the interviews at issue were part of an investigation in Texas, Fifth Circuit law on the scope of the investigative privilege should apply, but that in any event, the privilege does not apply, because the factors favoring disclosure outweigh any factors suggesting the privilege should be applied here. He also argues that the government's assertion of the privilege is flawed because it is not being asserted by the United States Attorney's Office in Texas.

Lastly, Dr. Fonn argues, in the alternative, that the government waived the investigative privilege by turning over to Defendants the affidavit in support of the Texas search warrant, which included information provided by two of the five individuals whose interviews are now at issue; and sending the May 22, 2015 email.

The government responds that "[i]n the final analysis, all that Dr. Fonn's motion demonstrates is the possibility that the reports might lead to the discovery of some cumulative impeachment evidence that would likely not be admissible," and so the motion should be denied. The government argues that Dr. Fonn has failed to show a need for the Reports of Interview, and maintains that the Reports of Interview would reveal the government's investigative techniques and procedures. In support of this position, the government has submitted a declaration from the FBI and a declaration from the Office of Inspector General for HHS, the two federal agencies that generated the Reports of Interviews at issue. Both declarations state that production of the

Reports of Interview would reveal the agents' choices regarding which facts, transactions, and persons they believed to be significant. (Doc. Nos. 142-2 and 142-3.) Both declarations also state that as the interviews occurred under proffer letters, production "may motivate potential witnesses in the future to avoid proffer interviews with [the government]." *Id*.

The government also argues that the Reports of Interview are "unlikely" to help Dr. Fonn impeach the witnesses who were interviewed in Texas, because he has not shown that those individuals adopted the statements therein. The government notes that there is nothing to prevent Dr. Fonn from deposing the five individuals and attempting to impeach them by their own prior statements made in such depositions. Lastly, the government argues that there is no support for applying Fifth Circuit case law on the scope and application of the investigative privilege.[1]

## **DISCUSSION**

The Court first agrees with the government that to the extent Eighth Circuit and Fifth Circuit law differ on the scope of the investigative privilege, Eighth Circuit law applies here. Similarly, Dr. Fonn's unsupported argument that the United States Attorney's Office in this judicial district cannot assert the privilege because the interviews were conducted by the United States Attorney's Office in another judicial district is without merit.

---

[1] The Court rejects out of hand the government's argument that the motion now under consideration should be denied for the additional reason that the motion "fails to clearly identify a request and response for the Court's consideration." (Doc. No. 142 at 4.)

The investigative privilege is a qualified privilege, and, as the Eighth Circuit has held, the privilege is "a very narrow one." *Stephens Produce Co. v. NLRB*, 515 F.2d 1373, 1377 (8th Cir. 1975). The privilege "need only be honored where the policy behind its invocation by the agency outweighs any necessity for the information shown by the party seeking it." *Id*. "The privilege is predicated on the public interest in minimizing the disclosure of documents that would tend to reveal law enforcement investigative techniques or sources." *SEC v. Shanahan*, No. 4:07CV270 JCH, 2009 WL 1955747, at *1 (E.D. Mo. July 6, 2009).

The proponent of protection under the investigative privilege has the burden of establishing its applicability. *Id*. at *2. The factors a district court should consider in balancing the public interest in nondisclosure against the need of a particular litigant for access to the privileged information include the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information, the impact upon persons who have given information of having their identities disclosed, whether the investigation has been completed, whether the information sought is available through other discovery or from other sources, and the importance of the information sought to the litigant's case. *Id*. (*citation omitted*). "Importantly, across-the-board claims of law enforcement privilege supported only by conclusory statements will not suffice." *Id*.

Upon consideration of the foregoing, the Court finds that the relevant factors favor requiring the government to produce the requested Reports of Interview. For example,

6

with respect to the extent to which disclosure would thwart governmental processes by discouraging citizens from giving the government information, the Court finds that the declarations noted above consist primarily of conclusory statements. With respect to the impact upon the five individuals of having their identities disclosed, as stated above the government has revealed their names in its Rule 26 disclosures, and provided a brief summary of the interviews in Defendants' criminal case. The Court notes that the government has not asserted that the proffer agreements with the five individuals provided that the individuals' statements would remain confidential. And while the government calls Dr. Fonn's supposition that none of the five witnesses implicated him in a kickback scheme "speculative and counter-intuitive," the government does not suggest that in fact any of them did.

Importantly, case against Verticor and Stanaford has been closed, and the criminal charges against Dr. Fonn (and the other Defendants in this case) have been dismissed. Thus, there is no concern that disclosure of the Reports of Interview will provide Dr. Fonn with "premature discovery of law enforcement actions that may be taken against him." *See id*. at *3 (citation omitted) (ordering the SEC, in a civil fraud case, to produce summaries of investigative interviews conducted with potential witnesses in a prior related criminal investigation against the defendant in which it was alleged, as was alleged in the civil case, that stock options were backdated, where the SEC did not make a specific showing that producing the summaries would discourage citizens from giving the government information, the identities of the witnesses were already revealed, and

7

taking current depositions would not be an acceptable substitute for the information contained in the summaries taken several years earlier).

On the other side of the scale, the Court finds that Dr. Fonn has made a reasonable showing with respect to the importance of the information sought. If, indeed, the Reports of Interview show that the five witnesses did not implicate Dr. Fonn in any kickback scheme with Verticor, that could provide valuable impeachment evidence if the witnesses testify otherwise at trial in this case. Moreover, the interviews' possible impeachment value is increased due to their timing. And if the individuals interviewed made statements implicating Dr. Fonn, the passage of time and the prospect of fading memories also weighs in favor of disclosing the interview notes. In sum, the Court concludes that the government has not met its burden of showing that the policy behind invocation of the investigative privilege outweighs the necessity for the information shown by Dr. Fonn.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Sonjay Fonn's motion (Doc. No. 139) to compel production of the four Reports of Interview is **GRANTED**. The government shall forthwith produce the four Reports of Interview.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 26th day of August, 2016.