UNITED STATES DISTRICT COURT
SOUTHEASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. PAUL CAIRNS, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:12CV00004 AGF |
| | ) | |
| D.S. MEDICAL, L.L.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This qui tam action is before the Court on Defendant Dr. Sonjay Fonn's motion (Doc. No. 157) to compel production of reports of interviews ("Reports") conducted by the Government before it intervened in this action or filed criminal charges against Defendants based on the allegations in the qui tam complaint. The Government asserts work product protection. For the reasons set forth below, the motion to compel will be denied with respect to interviews conducted after July 1, 2014; and granted in part and held in abeyance in part with respect to interviews conducted before July 1, 2014, pending the Court's *in camera* review of certain of those Reports.

**BACKGROUND**

The qui tam complaint in the present action was filed on January 5, 2012, claiming that Dr. Fonn and three other Defendants violated the False Claims Act, 31 U.S.C. §§ 3729-33, by submitting or causing to be submitted to the Medicare and Medicaid programs false claims for reimbursement for Dr. Fonn's services in

performing spinal surgeries between December 2008 and March 2012, and for the purchase of implant devices used in those surgeries. The claims for reimbursement were allegedly false because they were the result of alleged kickbacks that violated the federal criminal Anti-Kickback Statute.

Upon being served with the complaint, the Government began parallel civil and criminal investigations, with Assistant United States Attorney ("AUSA") Dorothy McMurtry assigned to the criminal aspects of the investigation, and AUSA Andrew Lay assigned to the civil fraud component. On March 13, 2012, the Government filed its first motion to extend the time the qui tam complaint would remain under seal beyond the 60 days provided for by statute, to allow the Government time to investigate the allegations and decide whether to intervene. The Court granted the motion. A second such motion was filed on August 9, 2012, and granted shortly thereafter.

On January 15, 2013, the Government made a presentation to counsel for Defendants to discuss the Government's theory of Defendants' criminal liability and the evidence supporting it. The Government asserts that during the presentation, "numerous potential witnesses" were identified, including Jon Wait.

On March 10, 2014, after two additional motions for an extension were granted, the Government moved to partially lift the seal to allow the Government to advise Defendants of the qui tam suit for the purpose of discussing the allegations therein with Defendants and to engage in any settlement negotiations that might arise. The Government stated that it had conducted a thorough investigation but had not yet advised Defendants of the existence of the qui tam case or the specific nature of the

2

allegations against them. The Court granted the motion.

On June 30, 2014, after the Court granted the Government one additional extension of time to intervene in the present case, the Government filed its notice of intention to intervene. The Government requested that, aside from the Relator's complaint, the Government's intervention complaint, and the notice of intention to intervene, "all other papers on file in this action remain under seal because in discussing the content and extent of the United States' investigation, such papers are provided by law to the Court alone for the purpose of evaluating whether the seal and time for making an election to intervene should be extended." (Doc. No. 23 at 2.)

In its August 7, 2014 memorandum opposing Defendants' motion (Doc. No. 33) to unseal the entire case, including the motions for extensions, the Government asked the Court to deny the motion on the ground that the extension motions contained "sensitive information which is protected by the deliberative process and investigative privileges. Disclosing such information could impede the ongoing criminal investigation and limit the Government's ability in future FCA qui tam investigations to candidly discuss the progress of intervention investigations with the Court." (Doc. No. 39.)

On September 18, 2014, the Government filed criminal charges against Defendants, arising out of the same conduct involved in this civil case. On October 6, 2014, the Court granted Defendants' motion to stay the civil case in light of the pendency of the criminal charges. The Court also, by agreement of the parties, denied without prejudice several pending motions, including the above-noted motion of

3

Defendants to unseal the entire record.

On December 31, 2014, AUSA McMurtry disclosed to counsel for Defendants in the context of the criminal case a summary of its interviews with seven individuals, including Todd Stanaford, Daniel Henson, Brandon Scott, and Reyn Gallacher. (Doc. No. 157-5.) On December 15, 2015, the Government dismissed the criminal charges, and the stay in the present case was lifted on December 17, 2015.

On June 9, 2016, this Court granted Dr. Fonn's motion to compel production of the Government's privilege log with the names of the witnesses interviewed by the Government during its parallel criminal and civil investigations. (Doc. No. 149.) In opposition to that motion, the Government submitted the affidavit of AUSA McMurtry, who attested that on several occasions she and AUSA Lay attended witness interviews that were conducted by law enforcement agents, and that the meeting with agents "were held in anticipation of possible litigation" based on the qui tam allegations. (Doc. No. 157-2.) Pursuant to the Court's June 9, 2016 Order, the Government produced its log (Doc. No. 157-1) which listed 68 interviews, 42 of which were conducted before the Government intervened in this case or filed criminal charges, and 26 of which were conducted after intervention. The log associates an attorney with 15 of the pre-intervention interviews, and 6 of the post-intervention interviews. The Government asserted the work product protection for all 68 Reports of these interviews. By motion dated July 27, 2016, Dr. Fonn seeks production of the 68 Reports.

## **ARGUMENTS OF THE PARTIES**

Dr. Fonn argues that the record, as summarized above, shows that the 42

interviews conducted before September 18, 2014 (the day the Government filed criminal charges against Defendants), were conducted during the investigative stage of the case, rather than "in anticipation of litigation," and thus the Reports of these interviews are not protected under Federal Rule of Civil Procedure 26(b)(3)(A), which generally protects "documents . . . prepared in anticipation of litigation or for trial." Dr. Fonn posits that each time the Government filed another motion for extension of the intervention period, and told the Court that it needed more time to conduct further investigation before determining whether it should intervene, the Government remained in the investigative stage and was not conducting interviews in anticipation of litigation. Dr. Fonn also notes AUSA McMurtry's statement that the meetings with the investigating agents were held in anticipation of *possible* litigation, which does not meet the standard for work product protection.

Dr. Fonn argues alternatively, that due to the length of time that has passed since the interviews in question, he is entitled to disclosure of these Reports under Rule 26(b)(3)(A)(ii), which provides that trial preparation material that is relevant may be discovered by a party who "shows that it has a substantial need for the materials to prepare its case, and cannot, without undue hardship, obtain their substantial equivalent by other means." Dr. Fonn posits that taking depositions of the interviewees now would not suffice, in light of lapsed memories. As an example, Dr. Fonn points to the June 24, 2016 deposition testimony of Jon Wait, who was interviewed by the Government several times beginning in the Fall of 2012, and who is listed by the Government as a person who is likely to be called as a witness at trial in the present

5

case. Wait essentially testified that he could not remember events that transpired in the time frame of 2012, nor his interviews with the Government, including his interview in April 2015.

Dr. Fonn explains that the Reports likely have important impeachment value, as the record suggests that several of the individuals interviewed who are listed as Government witnesses in the present case made statements during the interviews that certain relevant payments were not kickbacks.

Dr. Fonn also argues that there is evidence that some of the Reports contain verbatim statements of the interviewees, and that at a minimum, all quotations are required to be turned over under Rule 26(b)(3)(C)(ii),[1] along with the portions of the Reports necessary to put the quotes in context. (Doc. No. 157 at 12-13.) This is so, he argues, because under that Rule he has a right to any statement that would constitute Jencks Act[2] material in a criminal case. Dr. Fonn contends that when the Government

---

[1] This subsection of Rule 26 provides for the discoverability of a party's or person's own previous statements that were signed or adopted by the person or contemporaneously recorded/transcribed, about the action or its subject matter.

[2] The Jencks Act, 18 U.S.C. § 3500, requires the Government to turn over to a criminal defendant after a witness has testified on direct any statement which relates to the subject matter of the witness's testimony. For these purposes, a statement is defined as:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
>
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

6

indicted Defendants, it "knew it no longer intended to attempt to keep such materials confidential, and it was waiving any claim of privilege as to documents it would be turning over pursuant to criminal discovery rules and practice. Consequently, the Government no longer could assert the work product protection." *Id.*

Finally, Dr. Fonn argues that the Government waived work product protection as to the Reports related to Henson, Scott, Gallacher, and Stanaford because of the Government's partial disclosure during the criminal prosecution of these individuals' statements, which, according to Dr. Fonn, constitutes a complete waiver for the full Reports, under Federal Rule of Evidence 502(a).

The Government responds that all 68 Reports qualify as work product because they were prepared in anticipation of litigation. The Government asserts that criminal litigation "was anticipated immediately" upon receipt of the qui tam complaint, and in support of this position, submits a new affidavit by AUSA McMurtry dated August 4, 2016. In this affidavit, AUSA McMurtry states that she opened a criminal file on Defendants on January 26, 2012 (three weeks after the qui tam complaint was filed), and "[f]rom that time forward, anticipated litigating the case." (Doc. No. 158-1 at 2.) She further attests that the January 15, 2013 presentation to counsel for Defendants was made "[i]n anticipation of litigating both the criminal and civil cases." *Id.*

The Government argues that its seven requests for extension to intervene in the present action do not support Dr. Fonn's position, as "investigating a qui tam complaint

---

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

7

is not per se inconsistent with anticipating its litigation." (Doc. No. 158 at 7.)

The Government argues that the Reports are opinion work product, rather than just fact work product, and as such, subject to a high degree of protection because the law enforcement officers who conducted the interviews were directed by Government attorneys, with the attorneys present at many of the interviews. The Government further argues that Dr. Fonn has failed to make the showing of "substantial need," as required to defeat work product protection, because the interviewees are available to him for deposition and have been for years, as he knew many of their names since the January 15, 2013 presentation. The Government concedes that the interviewees, such as Wait, may not remember the events as well now as they did at the time of the interviews, but contends that Dr. Fonn has "ample means to refresh, probe, and cross examine Mr. Wait's recollection without invading the government's work product." *Id*. at 10. In addition, according to the Government, the desire to obtain impeachment evidence does not constitute "substantial need" under Rule 26(b)(3)(A)(ii).

Next, the Government counters Dr. Fonn's arguments under Rule 26(b)(3)(C)(ii) and the Jencks Act. As noted above, Rule 26(b)(3)(C)(ii) by its terms applies to a party's or person's own previous statements that were signed or adopted by the persons, or contemporaneously recorded/transcribed, neither of which is the case here. The Government maintains that entering into a criminal case does not constitute a waiver of work product protection; the Jencks Act protects disclosure of a witness statement until the witness has testified on direct examination; and Reports of Interview are not "statements" for purposes of the Jencks Act.

Finally, the Government states that its disclosure of descriptions of the statements of Henson, Scott, Gallacher, and Stanaford does not constitute a Federal Rule of Evidence 502(a) "intentional" disclosure, because the four statements were *Brady* material and therefore disclosure was required.

Defendants reply that AUSA McMurtry's new affidavit, as was her initial affidavit, is merely conclusory as to whether the interviews at issue were conducted in anticipation of litigation.

## DISCUSSION

### Were the Reports Prepared "in Anticipation of Litigation"?

The party seeking work product protection has the burden to prove that the materials were prepared in anticipation of litigation, that is "because of the prospect of litigation." *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002). "[T]he mere possibility that litigation may result is not sufficient to trigger the protection of the work product doctrine." *In re Advanced Pain Centers Poplar Bluff v. Ware*, 11 F. Supp. 3d 967, 973 (E.D. Mo. 2014). The Eighth Circuit has articulated the test for "in anticipation of litigation" as follows:

> [T]he work product rule does not come into play merely because there is a remote prospect of future litigation. In 8 Wright & Miller, [Federal Practice & Procedure, Civil] pp. 198-99, it is said . . . Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.

*Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977).

The Court believes that a close question is presented on whether the Government has met its burden of establishing that all the Reports at issue were prepared in anticipation of litigation, rather than to ascertain whether a prosecutable crime had been committed. As Dr. Fonn argues, conclusory statements such as AUSA McMurtry's that all the interviews, since January 26, 2012, were conducted in anticipation of criminal litigation, generally do not meet the burden. *See, e.g.*, *AAB Joint Venture*, 75 Fed. Cl. 432, 445 (2007) ("The party asserting the work product privilege must set forth objective facts to support its claim of privilege; a mere conclusory statement that the work product was created in anticipation of litigation is not enough."); *O'Shea v. Yellow Tech. Servs., Inc.*, 2000 WL 1456964, at *1 (D. Kan. Sept. 22, 2000) ("Defendant proffers several affidavits which recite that the documents at issue were created 'in anticipation of litigation.' A mere recitation of those magic words, however, is not enough.").

Nevertheless, in light of the "prospect of litigation" standard followed by the Eighth Circuit, as cited above, the Court concludes that all the Reports of interviews at issue likely satisfy the "prepared in anticipation of litigation" requirement for work product protection. As stated by a district court faced with a fact pattern similar to the one here,

> [e]very document prepared during an investigation is not necessarily prepared in anticipation of litigation, but nevertheless where an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product.

*In re Apollo Grp., Inc. Sec. Litig.*, 251 F.R.D. 12, 21 (D.D.C. 2008).

**Are the Reports Entitled to Work Product Protection?**

There are two kinds of work product—(1) ordinary fact work product and (2) opinion work product. Ordinary work product includes raw factual information; opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). Ordinary work product may be discoverable if the party seeking discovery has a substantial need for the materials and cannot obtain the substantial equivalent of the materials by other means. Fed. R. Civ. P. 26(b)(3)(A)(ii). In contrast, opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud. *Baker*, 209 F.3d at 1054.

Distinguishing opinion work product from fact work product is "inherently and necessarily fact specific." *United States v. Clemens*, 793 F. Supp. 2d 236, 252 (D.D.C. 2011). Courts explain that notes and memoranda reflecting the "opinions, judgments and thought processes of counsel" fall into the former category, whereas those whose content has not been "sharply focused or weeded" by counsel fall into the latter. *Id*. Accordingly, "substantially verbatim witness statements contained in interview memoranda that have not been sharply focused or weeded by an attorney" are generally held to be ordinary fact rather than opinion work product. *Id*.

Here, the Court first concludes that the Government has not met its burden to demonstrate that the Reports of the 47 interviews for which no attorney's name appears are opinion work product. Accordingly, the Court will treat these 47 Reports as fact

11

work product. Of these 47 interviews, 27 were conducted before the Government intervened in the qui tam suit, and 20 were conducted after intervention. With respect to the 27 pre-intervention interviews in this category of fact work product, the Court believes that Dr. Fonn has demonstrated a substantial need for the Reports. Courts explain that generally, statements given to criminal investigators

> provide the witnesses' initial, unadorned testimony on the key issues; and reveal how the witnesses' testimony and recollections may have changed over time. For those reasons, they are unique sources of both affirmative evidence and impeachment material for which there is no substitute. Particularly in qui tam actions, fairness dictates that both sides have equal access to relevant witness statements developed by law enforcement in prior or parallel criminal investigations.

*United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 426 (D.D.C. 2014) (granting motion to compel interview memoranda containing fact work product where interviews were conducted during criminal investigation of qui tam allegations); *see also Miller v. Holzmann*, 2007 WL 779393, at *1 (D.D.C. Mar. 8, 2007) (finding that a qui tam defendant had a substantial need for summaries of FBI witness interviews that were created during a since-closed criminal investigation of qui tam allegations and shared with the civil Government lawyers; "[t]he need of these defendants to see this file to, for example, impeach witnesses with prior inconsistent statements . . . is obvious and there is no substantial equivalent to the agents' notes").

The Court agrees with Dr. Fonn, that due to the passage of time since these pre-intervention interviews, the inevitable lapse of memories renders depositions taken now of the interviewees an unsatisfactory equivalent to the Reports of the earlier interviews.

With respect to the 15 pre-intervention interviews that associate a Government

attorney with the interview, it is not clear whether the Reports are fact or opinion work product. The Court recognizes that often "[a]ttorney notes reveal an attorney's legal conclusions because, when taking notes, an attorney often focuses on those facts that she deems legally significant." *Baker*, 209 F.3d at 1054 (citing *Petersen v. Douglas Cty. Bank & Trust Co*., 967 F.2d 1186, 1189 (8th Cir.1992)). But without seeing the 15 Reports, the Court cannot determine whether they constitute opinion work product or fact work product. Accordingly, the Court will require the Government to submit these Reports for the Court's *in camera* review.

With respect to 26 Reports of post-intervention interviews, the Court concludes that even if they all constitute fact work product, Dr. Fonn has not met his burden of demonstrating that he can not obtain the substantial equivalent by deposing the interviewees himself. The Court is not convinced that depositions taken as soon as Dr. Fonn knew the names of the interviewees would have presented any failed-memory problems. Even depositions taken now would not necessarily be less informative and helpful than the Reports of interviews dating back at the most to July 2014.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Dr. Sonjay Fonn's motion (Doc. No. 157) to compel production of the Reports of Interviews listed in the Government's log noted above is **GRANTED** in part, **HELD IN ABEYANCE** in part, and **DENIED** in part, as follows:

(1) The motion to compel is granted with respect to the 27 Reports of interviews

conducted before the Government intervened in this case for which an attorney's name is not associated. The Government shall produce these Reports to Dr. Fonn within seven days of this Memorandum and Order.

(2) The motion to compel is held in abeyance with respect to the 15 Reports of interviews conducted before the Government intervened in this case for which an attorney's name is associated. The Government shall submit these Reports to the Court within seven days of the date of this Memorandum and Order for *in camera* review.

(3) The motion is denied with respect to the 26 Reports of interviews conducted after the Government intervened in the case.

_____<br>
AUDREY G. FLEISSIG<br>
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of December, 2016.