UNITED STATES OF AMERICA,    )
ex rel. PAUL CAIRNS, et al.,    )
         )
      Plaintiffs,    )
         )
      vs.    )    Case No.  1:12CV00004 AGF
         )
D.S. MEDICAL, L.L.C., et al.,    )
         )
      Defendants.    )

## MEMORANDUM AND ORDER

This qui tam action under the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA")
is before the Court on the motion (ECF No. 197) of the United States as
Intervenor/Plaintiff for partial summary judgment, or for an Order under Federal Rule
of Civil Procedure 56(g) that certain material facts are not genuinely in dispute and
should be treated as established in the case.  For the reasons set forth below, the
government's motion will be denied, with leave granted to the government to amend
the proposed findings that are the subject of the motion.

## BACKGROUND

The operative complaint (Doc. No. 26) claims that the four Defendants in the
case – Dr. Sonjay Fonn, a neurosurgeon; Midwest Neurosurgeons, LLC ("Midwest
Neurosurgeons"), a company formed and operated by Dr. Fonn; Deborah Seeger, Dr.
Fonn's fiancée; and D.S Medical, LLC ("DSM"), a company formed and created by
Seeger for the distributorship of spinal implant devises – violated the FCA by

submitting or causing to be submitted to the federal Medicare and Medicaid programs false claims for reimbursement for Dr. Fonn's services in performing spinal surgeries at St. Francis Medical Center ("SFMC") in Cape Girardeau, Missouri, between December 2008 and March 2012, and for the purchase of implant devices used in those surgeries. The claims for reimbursement were allegedly false because they did not disclose that they were the result of alleged kickbacks that violated the federal criminal Anti-Kickback Statute ("AKS").

The complaint alleges that Dr. Fonn would select the devices he would use during surgeries at SFMC, based, at least in part, on the fact that DSM would serve as the local distributor for the manufacturer of those devices. DSM would then be paid commissions by the manufacturers, and DSM and Seeger would in turn share those commissions with Dr. Fonn. The alleged illegal kickbacks are from Seeger and DSM to Dr. Fonn, and from spinal manufacturers to DSM in the form of inflated commissions. The complaint also asserts common law claims for payment by mistake of fact, unjust enrichment, and fraud.

The government asks the Court for a Rule 56(g) order, finding the following four facts as established with regard to the FCA claims in this case:

1. Defendants "arrang[ed]," within the meaning of the AKS, 42 U.S.C. § 1320a–7b(b)(1)(A)–(B), for spinal devices to be purchased by SFMC through DSM for use in the 228 surgeries performed by Dr. Fonn listed in Exhibit 1 (Doc. No. 201-1) to the government's Statement of Uncontroverted Material Fact;

2. The above "arrangement" was to procure spinal devices "for which payment may be made in whole or in part under a Federal health care program";

3. Defendants presented or caused to be presented at least 119 "claims," within the meaning of the FCA, 31 U.S.C. §§ 3729(a)(1)(A), 3729(b)(2), for professional services, and at least 173 "claims" for hospital services, to the Medicare program; and

4. Defendants "caused" to be presented at least 55 "claims," within the meaning of the FCA, 31 U.S.C. §§ 3729(a)(1)(A), 3729(b)(2), for hospital services to the Missouri Medicaid program.

The government asserts that these facts are undisputed, and that granting the Rule 56(g) order requested would narrow and simplify the jury's task at trial. Exhibit 1 is a chart that lists 228 surgeries by date from January 19, 2019, through March 12, 2012. It was prepared by Timothy Minden, Special Agent for the Department of HHS, Office of the Inspector General, Office of Investigations. The chart contains a column showing alleged payment amounts made by Medicare or Medicaid for each of the 228 surgeries. Agent Minden's affidavit describes how he and individuals working at his direction retrieved the data underlying the chart from federal and state agencies, and chose which data to include in the chart. According to the government,

> [t]he undisputed material facts show that Dr. Fonn selected which spinal devices to use for each of the surgeries at issue; that he arranged for DSM to make those particular products available to him during the surgeries he performed; and that both Midwest Neurosurgeons and SFMC billed federal healthcare programs and were subsequently reimbursed for those surgeries. Therefore, the government respectfully requests that the Court rule, as a matter of law, that one element of the AKS has been satisfied: Defendants arranged for the purchasing and furnishing of items by SFMC through DSM.

Defendants jointly respond that disconnecting the AKS requirement of "arranging" from the AKS requirement that remuneration is received in return, as granting the government's motion would do, would be confusing to the jury and

prejudicial to Defendants. They also argue that Exhibit 1 is inadmissible because it is based on Agent Minden's inadmissible affidavit. Defendants challenge Agent Minden's affidavit on the ground that it is not based on his personal knowledge of how the data he used is collected. The admissibility of Exhibit 1 and Agent Minden's affidavit is the subject of a separate motion to strike filed by Defendants.

Defendants argue that, moreover, even if admissible, the accuracy of Exhibit 1 is not undisputed. Defendants point to Agent Minden's deposition testimony that he did not validate the data he used for the chart. They also point to discrepancies in the government's data, especially with regard to Medicare Part B claims supposedly submitted by Dr. Fonn or Midwest Neurosurgeons. Defendants maintain that they are entitled to cross-examine whatever witnesses the government may decide to present to attempt to properly introduce the data at issue. Lastly, Defendants argue that the government failed to establish that each Defendant "caused" SFMC to submit claims to Medicare and Medicaid, as FCA causation requires direct participation in the claims process.

The government replies that at the least, the Court can issue a Rule 56(g) order that "Defendants" selected which type of spinal devices to use during a particular patient's surgery and from which manufacturer those devices would be purchased, a fact established by the record evidence. The government refutes Defendants' argument that granting the government's motion would result in jury confusion. According to the government, the introduction at trial of evidence on the issues of remuneration and scienter, coupled with properly drafted jury

instructions, will make it very clear that only the AKS element of "arranging" has been established.

The government further replies that it has produced during discovery the underlying claims records that were used to create Exhibit 1 and that the claims data produced is sufficient to demonstrate that "Defendants submitted, or caused to be submitted, the claims detailed on Exhibit 1." According to the government, that data, along with other admissible evidence, shows that SFMC "submitted claims for surgeries performed at the hospital where Dr. Fonn was listed on the hospital's claim form as the 'operating physician' and that Midwest Neurosurgeons submitted Medicare Part B claims for Dr. Fonn's professional services."

The government relies on the fact that in response to its motion for partial summary judgment, Defendants offered no evidence disputing the facts that Dr. Fonn performed surgery on each of the patients identified on Exhibit 1, that "Dr. Fonn or Midwest Neurosurgeons" submitted Part B claims for the patients identified on Exhibit 1, or that SFMC submitted the Part A or Medicaid claims for the patients identified on Exhibit 1.

With respect to the purported inaccuracies in the data underlying Exhibit 1 identified by Defendants, the government argues that the inaccuracies do not undercut the proposition that claims were submitted for each of the surgeries performed on the patients listed in Exhibit 1. The government represents that it "is not asking the Court to rule that every line item and data field in the underlying claims data is accurate. Instead, the government is only asking for the narrow ruling that Defendants submitted

or caused the submission of claims to federal healthcare programs for the patients listed on Exhibit 1." ECF No. 232 at 7-8. The government disputes Defendants' argument that in this context, FCA liability requires direct participation in the claim submission process, something that is lacking here. The government asserts that this argument is legally flawed, and, in addition, disingenuous as Defendants did not make this argument in their own motion for summary judgment. The government concludes by asserting that "[a]ll four Defendants participated in each of the 228 surgeries. All four Defendants were part of the "arrangement" . . . covered by the AKS."

## DISCUSSION

### Rule 56(g)

Rule 56(g) provides that: "If the court does not grant all relief requested by the [summary judgment] motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). The advisory committee's note provide as follows:

> Once the Court has applied the summary-judgment standard of Rule 56(a) to each claim and defense identified by the motion, it may also decide to expedite the adjudication by disposing of any undisputed material facts. Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event.

Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment; *see also* 10B

Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure*

§ 2737 (4th ed. 2016).

### The FCA and the AKS

The FCA imposes liability on any person who "knowingly presents, or causes to

be presented, a false or fraudulent claim for payment or approval" by the government.  31

U.S.C. § 3729(a)(1)(A).   The misrepresentation must be "material" to the government's

decision to pay the claim.  *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989,

2001 (2016).   To establish a prima facie case, a plaintiff must demonstrate (1) a false or

fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to

the government for payment or approval; (3) with the knowledge that the claim was false.

*McNutt ex rel. United States v. Haleyville Med. Supplies, Inc*., 423 F.3d 1256, 1259 (11th

Cir. 2005).  Defendants are subjected to treble damages plus civil penalties of up to

$10,000 per false claim.  § 3729(a).

In *Universal Health Services*, the Supreme Court endorsed the "implied false

certification" theory of liability under the FCA, relied upon by the government here,

holding that "when . . . a defendant makes representations in submitting a claim but omits

its violations of [material] statutory . . . requirements, those omissions can be a basis for

liability if they render the defendant's representations misleading with respect to the

goods or services provided."  *Id*. at 1999.

The AKS provides, in relevant part:

(b) Illegal remunerations:

(1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind —

    (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

    (B) in return for purchasing, leasing, ordering or arranging for or recommend purchasing, leasing or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

42 U.S.C. § 1320a–7b(b)(1)(A)–(B).

In March 2010, Congress amended the AKS to clarify that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA]." 42 U.S.C. § 1320a–7b(g). Both before and after *Universal Health Services*, and before the 2010 amendment to the AKS, this Court and others have held that a violation of the AKS can form the basis of a claim under the FCA. *See, e.g., United States ex rel. Health Dimensions Rehab., Inc. v. RehabCare Grp., Inc.*, No. 4:12CV00848 AGF, 2013 WL 4666338, at *4 (E.D. Mo. Aug. 30, 2013) (citing cases).

When, as here, the government bases an FCA claim on violations of the AKS, a failure to establish adequate factual support for any element of the alleged AKS crime entitles the defendants to summary judgment. *See United States ex rel. Jamison v. McKesson Corp.*, 900 F. Supp. 2d 683, 697 (N.D. Miss. 2012).

Without deciding at this point the admissibility of Exhibit 1 and/or Agent Minden's affidavit for all purposes, the Court does not agree with one of Defendants' basic arguments – that disconnecting the AKS requirement of "arranging" from the AKS requirement that remuneration is received in return would confuse a jury. These are two separate elements that the government will need to prove and there is no reason a jury would have difficulty understanding that. The Court also rejects Defendants' argument that the "caused to be presented" aspect of the FCA is not met here by claims of SFMC to a federal healthcare program for Dr. Fonn's services and for the devices. *See, e.g., U.S. ex rel. Hutcheson v. Blackstone Med., Inc*., 647 F.3d 377, 389 (1st Cir. 2011) ("The Supreme Court has long held that a non-submitting entity may be liable under the FCA for knowingly causing a submitting entity to submit a false or fraudulent claim, and it has not conditioned this liability on whether the submitting entity knew or should have known about a non-submitting entity's unlawful conduct.").

But the Court finds the government's present motion problematic in that the requested findings lump all Defendants together, when it is clear, as Defendants argue, that not each proposed factual finding has been established as to each Defendant. Furthermore, because, as noted above, the civil penalties faced by Defendants are on a per claim basis, proposed findings (3) and (4), with imprecise numbers and identities of claims involved, are not proper for a Rule 56(g), as drafted.

Rather than the Court making findings that were not requested, the Court will allow the government to amend the findings it asks the Court to include in a Rule 56(g) order. The Court believes that certain basic facts underlying the claims in this case are

appropriate for stipulation by the parties, and encourages such an effort.  Absent that, a Rule 56(g) order on certain issues may well be in warranted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Government's motion for partial summary judgment (Doc. No. 197) is **DENIED** without prejudice to the government filing a new motion for partial summary judgment within seven (7) days of this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of May, 2017.