UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. PAUL CAIRNS, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:12CV00004 AGF |
| | ) | |
| D.S. MEDICAL, L.L.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This qui tam action under the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA") is before the Court on Defendants' joint motion (ECF No. 198) for summary judgment. For the reasons set forth below, the motion will be denied.

## BACKGROUND

The qui tam complaint in the present action was filed on January 5, 2012, claiming that the four Defendants – Dr. Sonjay Fonn, a neurosurgeon; the limited liability company Dr. Fonn created, Midwest Neurosurgeons, LLC ("Midwest Neurosurgeons"); Dr. Fonn's fiancée, Deborah Seeger; and Seeger's spinal implant distributorship, D.S Medical, LLC ("DSM") – violated the FCA by submitting or causing to be submitted to the federal Medicare and Medicaid programs false claims for reimbursement for Dr. Fonn's services in performing spinal surgeries at St. Francis Medical Center ("SFMC") between December 2008 and March 2012, and for the purchase of implant devices used in those surgeries. The claims for reimbursement

were allegedly false because they were the result of alleged kickbacks that violated the federal criminal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a, *et seq*.

The intervenor complaint (ECF No. 26) alleges that Dr. Fonn would select the devices he would use during surgeries at SFMC, based, at least in part, on the fact that DSM served as the local distributor of the devices.  DSM would be paid commissions by the manufacturers, and Seeger/DSM would in turn share those commissions by providing in-kind remuneration to Dr. Fonn, in exchange for his continuing to use DSM as his distributor.  The alleged kickbacks are this in-kind remuneration from Seeger/DSM to Dr. Fonn, and kickbacks from spinal implant manufacturers (specifically Verticor and Amedica) in the form of inflated commissions paid to DSM.  The alleged remuneration from Seeger/DSM to Dr. Fonn was allowing him to live in a home she owned, without paying rent at a fair market value, and allowing him use of a yacht and properties she purchased through a company (DS Enterprises) funded by DSM.  The complaint asserts FCA claims against each Defendant individually and in conspiracy with each other, and also asserts state common law claims for payment by mistake of fact, unjust enrichment, and fraud.

The record before the court presents sufficient evidence for a jury to find the following:  Dr. Fonn moved to Cape Girardeau in 2007, and in 2008 joined Cape Neurosurgeons ("CNS"), a neurosurgical practice group owned by Dr. Kee Park.  Dr. Fonn was aware that John Park, Dr. Park's brother, owned a company that had served as a distributor for medical products used by Dr. Park, Dr. Fonn, and other physicians at CNS.  Dr. Fonn was aware of the significant income John Park realized from this

arrangement. After Dr. Park moved out of town in August 2008, Dr. Fonn told a regional sales manager for a surgical device manufacturer that Dr. Fonn wanted Seeger to be his distributor so that he could duplicate the scenario that John Park had. Dr. Fonn persuaded Seeger to become a distributor by promising to support her business, and in October 2008, he paid for the incorporation of DSM. Thereafter, in order for a spinal device manufacturer to secure Dr. Fonn's business, they had to provide DSM with allegedly inflated commission agreements.

As a result, DSM earned millions of dollars in commission revenue from these device manufacturers. Seeger/DSM shared that revenue with Dr. Fonn by providing him with in-kind remuneration, primarily in that she allowed Dr. Fonn to live with her from at least October 2009 to March 2012 in a home she purchased, renovated, and furnished with funds from her DSM Bank account, at a rent a jury could find was below fair market value. In addition, as noted above, she allowed him use of a yacht and properties she purchased through DS Enterprises. Seeger/DSM provided Dr. Fonn with these forms of remuneration in order to induce him to continue using her company as his distributor.

In support of their motion for summary judgment, Defendants argue that the allegations relating to remuneration from Seeger/DSM to Dr. Fonn in the form of residing at the home Seeger owned are without evidentiary support, as are other alleged financial benefits flowing to Dr. Fonn from Seeger/DSM. Defendants also assert that the Court should apply the "primary purpose" standard for the intent-to-induce element of the alleged AKS violation, rather than the "one purpose" standard; and the

3

government's evidence does not create a jury question with regard to the intent element under the "primary purpose" standard.  Defendants argue that applying the "one purpose" standard would make the AKS void for vagueness.

With respect to the alleged inflated commissions paid by spinal device manufacturers to DSM, Defendants argue that the evidence shows that the commissions paid to DSM were not inflated, and that there is no evidence that Dr. Fonn conditioned the use of particular implants on DSM being the distributor of the implants.

Defendants next argue that they cannot not be liable under the FCA for the claims for Medicare or Medicaid reimbursement submitted by SFMC.  This is so, according to Defendants, because the government did not submit during discovery copies of any certifications by SFMC that the claims for reimbursement did not involve underlying violations of the AKS by Defendants.  Thus, Defendants argue, the hospital claims for reimbursement were neither expressly nor implicitly false.  They further argue that the government cannot establish that any misrepresentation with respect to the hospital claims was material to the government's decision to pay the claims, as required for liability under the FCA.  Defendants reassert the argument they raised in the context of their motion to dismiss the action for failure to state a claim, that the government cannot establish that "but for" the alleged kickbacks, Dr. Fonn's utilization of spinal implants would have been different.  Lastly, Defendants argue that the government's equitable claims fail for the same reasons the FCA claims fail, and further, because the FCA provides an adequate remedy at law for the alleged wrongdoing at issue in this case.

4

## DISCUSSION

### Summary Judgment Standard

Federal Rule of Civil Procedure Rule 56(c)(2) provides that summary judgment shall be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007).

To be a material fact, the factual issue must potentially "affect the outcome of the suit under the governing law." *Id.* (citation omitted). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[T]he burden of demonstrating that there are no genuine issues of material fact rests on the moving party." *Allard v. Baldwin*, 779 F.3d 768, 770 (8th Cir. 2015).

### The FCA and the AKS

The FCA imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" by the government. 31 U.S.C. § 3729(a)(1)(A). The misrepresentation must be "material" to the government's

5

decision to pay the claim.  *Universal Health Servs., Inc. v. United States ex rel Escobar*, 136 S. Ct. 1989, 2001 (2016).  To establish a prima facie case, a plaintiff must demonstrate (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the government for payment or approval; (3) with the knowledge that the claim was false.  *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc*., 423 F.3d 1256, 1259 (11th Cir. 2005).  Defendants are subject to treble damages plus civil penalties of up to $10,000 per false claim.  31 U.S.C. § 3729(a).

In *Universal Health Services*, the Supreme Court endorsed the "implied false certification" theory of liability under the FCA, relied upon by the government here, holding that "when . . . a defendant makes representations in submitting a claim but omits its violations of [material] statutory . . . requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided."  *Id*. at 1999.

The AKS provides, in relevant part:

(b) Illegal remunerations:

> (1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind —
>
>> (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>>
>> (B) in return for purchasing, leasing, ordering or arranging for or recommend purchasing, leasing or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

6

>   shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

42 U.S.C. § 1320a–7b(b)(1)(A)–(B).

In March 2010, Congress amended the AKS to set out specifically that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA]." 42 U.S.C. § 1320a–7b(g). Both before and after *Universal Health Services*, and before the 2010 amendment to the AKS, this Court and others have held that a violation of the AKS can form the basis of a claim under the FCA. *See, e.g., United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009); *United States ex rel. Health Dimensions Rehab., Inc. v. RehabCare Grp., Inc.*, No. 4:12CV00848 AGF, 2013 WL 4666338, at *4 (E.D. Mo. Aug. 30, 2013) (citing cases); *United States v. Omnicare, Inc.*, No. 07 C 05777, 2013 WL 3819671, at *9 (N.D. Ill. July 23, 2013).

"[T]the language of the FCA indicates a purpose to reach any person [not just the entity that submitted the claim for payment] who knowingly assisted in causing the government to pay claims which were grounded in fraud." *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 390 (1st Cir. 2011) (citation omitted) (holding that the government stated a FCA claim against a medical device manufacturer who provided kickbacks to physicians in exchange for use of its devices in surgery); *see also United States v. Medtronic, Inc.*, No. CV 15-6264, 2017 WL 2653568, at *4 (E.D. Pa. June 19, 2017) ("The court recognizes that medical device manufacturers and distributors like Medtronic may be subject to FCA liability for knowingly paying

kickbacks to a provider knowing that the provider will seek reimbursement from [Medicare and Medicaid] and that [those healthcare programs] will require a compliance certification.").

Based on the above statutory language and case law, Defendants argument that the hospital claims for reimbursement were not false, as a matter of law, and that the government cannot establish that any misrepresentation with respect to the hospital claims was material to the government's decision to pay the claims, are without merit.

When, as here, the government bases its FCA claims on violations of the AKS, a failure to establish adequate factual support for any element of the alleged AKS violation entitles the defendants to summary judgment. *See United States ex rel. Jamison v. McKesson Corp*., 900 F. Supp. 2d 683, 697 (N.D. Miss. 2012*); Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 673 (N.D. Ill. 2006).

Here the Court concludes that the government can establish a violation of the AKS by proving that Defendants knowingly and willfully entered into a scheme pursuant to which Dr. Fonn received remuneration, as that term is used in the AKS, to induce him to arrange for the purchase of certain spinal devices that were to be paid for by a federal health care program. Courts have construed "remuneration" broadly to include "anything of value" in any form or manner. *See, e.g., United States ex rel. Bingham v. HCA, Inc.*, No. 13-cv-23671-MGC, 2016 WL 344887, at \*6 (S.D. Fla. Jan. 28, 2016) (concluding that the defendant's obligation to construct and renovate office space for future occupation by referring physician tenants, especially at a below fair market value rental rate, was a financial benefit to those physicians and thus constituted

8

"remuneration" under the AKS). Here, being allowed to live in a home at a below market value rent could constitute remuneration under the AKS.

The Court further concludes that the record establishes triable issues on whether one purpose of that remuneration was to induce Dr. Fonn's arranging for spinal devices to be ordered through DSM, devices that would be paid for by Medicare or Medicaid. As Defendants recognize, five circuits have adopted the "one purpose" standard. *See, e.g., United States v. Borrasi*, 639 F.3d 774, 780-82 (7th Cir. 2011); *United States v. McClatchy*, 217 F.3d 823, 835 (10th Cir. 2000). The Court agrees with these decisions, and will apply that standard to this case. Defendants' invocation of the "primary purpose" standard is based on the Eighth Circuit Model Instructions for AKS cases, but as Defendants concede, the Model Instructions are "merely helpful suggestions to assist the district courts." *United States v. Norton*, 846 F.2d 521, 525 (8th Cir. 1988).

Similarly, the Court believes that based on the record, a jury could find that the commissions spinal device manufacturers paid DSM were inflated, lending support to the government's theory of the case. The Court further concludes that Defendants' materiality, causation, and void-for-vagueness arguments are without merit. Lastly, at this stage of the litigation, as the FCA claims against the defendants have not been fully litigated, it would be premature to grant Defendants summary judgment on the government's unjust enrichment and payment by mistake causes of action. Of course, if the government prevails in this case, it will not be awarded any duplicative monetary damages.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' joint motion for summary judgment is **DENIED**. (ECF No. 198.)

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 31st day of August, 2017.