UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. PAUL CAIRNS, et al., | ) ) ) |
| Plaintiffs, | ) |
| v. | ) Cause No. 1:12-CV-00004 AGF ) |
| D.S. MEDICAL, L.L.C., et al., | ) ) |
| Defendants. | ) |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW

The centerpiece of Defendants' argument is a "failure of proof." The jury's verdict in Counts I and II are the ultimate evidence of the Government's "failure of proof." Moreover, Defendants can now also rely on a critical admission by the Government. For the first time, it admits a failure of proof as to Count III when it acknowledges that the jury found Count III claims "for which there was no completed FCA violation." *See* #477, p. 16. Such an admission is fatal to sustaining the current judgment. As discussed below, that admission alone requires the Court to, at a minimum, reassess its application of penalties in this case.[1] But, far beyond just the issue of a reduction in penalties, as discussed further below, the failure of proof as to each Count should result in a judgment in favor of the Defendants as to all Counts.

## ARGUMENT

### A.   Count's III Verdict Is Actually a Finding In Favor of Fonn and Seeger.

The Government's concession that the jury found Count III claims "for which there was no completed FCA violation" provides irrefutable support for the position advanced in Section

---

[1] Of course, there exists the major hurdle of no ability on the part of the Court or the parties to determine which claims those may be.

1

XII of Defendants' original memorandum. *See* #469-1 at 39-41. In Count III, the jury found for plaintiff as to Dr. Fonn and Ms. Seeger but found zero damages. The Government now explains the Count III verdict by asserting that, based on its analysis of the dollars assessed in Count III, the jury found Count III claims "for which there was no completed FCA violation." *See* #477 at 16. Under that analysis, for Dr. Fonn and Ms. Seeger, who were assessed no damages, that means the jury's finding as to all Count III claims is there was "no completed FCA violation" in which they participated. The verdict of zero damages has always led to that conclusion, but the Government's concession clearly affirms it. If the jury was assessing which claims had evidence of a completed violation, their finding of zero damages as to Dr. Fonn and Ms. Seeger must mean the jury found those two did not participate in any "completed FCA violation."

Therefore, applying the well-established principle that FCA conspiracies require an underlying FCA violation, the Court should, like other courts, conclude that "[t]he only other reasonable construction that could be given the verdict is that it was intended to be a finding for defendant*." Joseph v. Rowlen*, 425 F.2d 1010, 1012 (7th Cir. 1970) (relying on *Wingerter v. Maryland Cas. Co.*, 313 F.2d 754, 756-57 (5th Cir. 1963)). *See also Woods v. Wills*, No. 1:03-CV-105 CAS, 2006 WL 521497, at *2 (E.D. Mo. Mar. 2, 2006), *aff'd*, 225 F. App'x 420 (8th Cir. 2007) ("Because the jury rendered its verdict in favor of plaintiff Woods but awarded her no damages, and plaintiff failed to object to the verdict or to request a nominal damage instruction, defendant Wills was entitled to judgment as a matter of law.")

Application of the above case law is even more appropriate given the Jury Instructions. As proffered by the Government, the jury was instructed to determine "the amount of damages for which each individual Defendant may be responsible as to each question posed." *See* Final Jury Instructions (#422). The verdict form unequivocally solicited separate damage amounts for

Count III. As discussed in detail in Doc. #467, hereby incorporated by reference, the jury's zero damages was intended.

### B.     Civil Conspiracy Requires Proof of an Underlying Tort.

The Government argues that an FCA conspiracy is the one civil conspiracy that does not require proof of the underlying tort. This argument ignores Supreme Court and Eighth Circuit precedent: "a conspiracy claim was not an independent cause of action, but was only the mechanism for subjecting co-conspirators to liability when one of their member committed a tortious act." *Beck v. Prupis,* 529 U.S. 494, 504 (2000). And the Eighth Circuit has found: "a claim of civil conspiracy does not set forth an independent cause of action but rather is sustainable only after an underlying tort claim has been established…" *Hanten v. School Dist. of Riverview Gardens,* 183 F.3d 799, 809 (8th Cir. 1999) (quotations omitted). *See also K & S P'ship v. Cont'l Bank, N.A.*, 952 F.2d 971, 980 (8th Cir. 1991) ("a conspiracy claim is sustainable only after an underlying tort claim has been established."); *Mizokami Bros. of Arizona v. Mobay Chem. Corp.*, 660 F.2d 712, 718 (8th Cir. 1981) ("A claim of civil conspiracy thus rests on the underlying substantive wrong.")

The Government argues the FCA is unique. However, the Supreme Court "presume[s]" that when Congress establishes a civil conspiracy cause of action in a statute, it means to adopt such "well-established civil conspiracy principles," and the Court "interpret[s] the statute in a way that is most consistent with these principles." *Beck*, 529 U.S. at 504, 505 ("We presume, therefore, that when Congress established in RICO a civil cause of action for a person injured…by reason of a conspir[acy], it meant to adopt these well-established common-law civil conspiracy principles.")(quotations omitted).

The application of these principles to the Government's Count III claim is indisputable. In fact, the DOJ has adopted this position in the past.[2] Multiple courts have clearly found that, like any other civil conspiracy, an actionable FCA conspiracy exists only where there is an underlying FCA violation.[3] The Government attempts to downplay the impact of *Pencheng Si v.*

---

[2] *See, e.g.*, (a) Government's Brief in Response to Motion to Dismiss, *United States v. Taber Extrusions L.P. and National Materials L.P.*, 2000 WL 34593663 (E.D.Ark.) **("[G]eneral civil conspiracy principles apply'' to the FCA's cause of action for conspiracy** under 31 U.S.C. § 3729(a)(3). *United States ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542, 545 n. 3 (7th Cir. 1999). (emphasis added);
(b) Government's Memorandum in Support of Plaintiff's Motion for Summary Judgment, *United States v. Taber Extrusions L.P. and National Materials L.P.*, 2001 WL 34872279 (E.D.Ark.) (submitted by the then-Assistant Attorney General):
  **"'[G]eneral civil conspiracy principles apply' to FCA conspiracy claims** under 31 U.S.C. § 3729(a)(3). . . . To prevail, the United States must establish the elements of a civil conspiracy: "(1) two or more persons, (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) **damages as the proximate results of the conspiracy**." *Temporomandibular Joint (TMJ) Implant Recipients v. The Dow Chemical Co.*, 113 F.3d 1484, 1498 (8th Cir. 1997); *United States v. Bouchly*, 860 F. Supp. 890, 893 (D.D.C. 1994). (emphasis added).

[3] See, e.g., *U. S. ex rel. Kietzman v. Bethany Circle of King's Daughters,* 305 F. Supp. 3d 964, 979–80 (S.D. Ind. 2018)("**Put differently**, **an actionable FCA conspiracy exists only where at least one of the alleged co-conspirators actually committed an FCA violation**."); *United States v. Pub. Warehousing Co. K.S.C.*, 242 F. Supp. 3d 1351, 1358 (N.D. Ga. 2017)(" **It is true that FCA conspiracy claims are viewed the same way as traditional conspiracy claims, and as such are not independent causes of action**.");*United States v. Del-Jen, Inc.,* No. 3:13-CV-4616-L, 2017 WL 958604, at *6 (N.D. Tex. Mar. 13, 2017), appeal dismissed sub nom. *U. S. ex rel Jamison v. Del-Jen, Inc.*, No. 17-10409, 2017 WL 4574490 (5th Cir. July 10, 2017), superseded sub nom. *U. S. ex rel. Jamison v. Del-Jen, Inc.,* No. 17-10409, 2018 WL 4055235 (5th Cir. 2018), and aff'd sub nom. *U. S. ex rel. Jamison v. Del-Jen, Inc.*, No. 17-10409, 2018 WL 4055235 (5th Cir. Aug. 24, 2018); *U. S. ex rel. Durcholz v. FKW, Inc*, 198 F.3d 542, 545 fn.3(7th Cir. 1999); *United States v. Murphy,* 937 F.2d 1032, 1039 (6th Cir.1991); *United States v. Toyobo Co.*, 811 F. Supp. 2d 37, 50 (D.D.C. 2011); *U. S. ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 133 (D.D.C. 2014); *U.S. ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 857 (S.D. Tex. 2003), aff'd, 384 F.3d 168 (5th Cir. 2004); *U. S. v. President & Fellows of Harvard Coll.*, 323 F. Supp. 2d 151, 196 (D. Mass. 2004); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005); *U. S. v. Marder*, 208 F. Supp. 3d 1296, 1313 (S.D. Fla. 2016); *U.S. ex rel. Wilkins v. N. Am. Const. Corp.*, 173 F. Supp. 2d 601, 639 (S.D. Tex. 2001); *U.S. ex rel. Westmoreland v. Amgen, Inc.,* 738 F. Supp. 2d 267, 280 (D. Mass. 2010); *U.S. ex rel. Kress v. Masonry Sols. Int'l, Inc.*, No. CIV.A. 12-2380, 2015 WL 365835, at *6 (E.D. La. Jan. 26, 2015); *United States v. Wagoner*, No. 2:17-CV-478-TLS, 2018 WL 4539819, at *8 (N.D. Ind. Sept. 20, 2018); *United States ex rel. Rizzo v. Horizon Lines, LLC,* No. CV 10-7409 PA (AJWX), 2013 WL 12131171, at *4 (C.D. Cal. Oct. 28, 2013); *U. S. ex rel. Coppock v. Northrop Grumman Corp.*, 2003 WL 21730668, at *14 n.17 (N.D. Tex. July 22, 2003) (citing *United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991)) (**"A claim for civil conspiracy is generally not viable without the commission of an underlying wrongful act."**)(emphasis added).

*Laogai Research Foun.* However, the Third Circuit has cited it for the exact proposition as at issue here—"[T]here can be no liability for conspiracy where there is no underlying violation of the FCA." *U.S. ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 507 (3d Cir. 2017).

None of the limited number of cases relied on by the Government makes any reference to the "well-established civil conspiracy principles"—suggesting such arguments were never made, let alone addressed by the courts in those cases. The Government primarily relies on a Fifth Circuit case, *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009). Yet, earlier and subsequent Fifth Circuit cases embrace the principle that "a civil conspiracy claim cannot stand alone, but must be based on an underlying tort." *Aiken v. Rimkus Consulting Grp., Inc.,* 333 F. App'x 806, 812 (5th Cir. 2008); *Petrello v. Prucka*, 484 Fed. Appx. 939 (5th Cir. 2012). And *Kanneganti* did not refute or even address this principle. Moreover, since *Kanneganti,* courts within the circuit all support Defendants' position. *See, e.g.*, *Del-Jen, Inc.*, 2017 WL 958604, at *6, fully cited in footnote 4, supra ("General civil conspiracy principles apply to conspiracy claims under the FCA."); *United States ex rel. Solomon v. Lockheed Martin Corp.*, 2016 WL 7188298, at *6 (N.D. Tex. Dec. 12, 2016), *aff'd*, 878 F.3d 139 (5th Cir. 2017) ("Liability for conspiracy under the FCA is governed by traditional principles of civil conspiracy."): *United States ex rel. Phillips v. L-3 Commc'ns Integrated, Sys. L.P.*, 2012 WL 3649699, at *8 (N.D. Tex. Aug. 24, 2012) ("General civil conspiracy principles apply to conspiracy claims under the False Claims Act.")

The Government's extensive discussion on the lack of need for actual damages in FCA cases is a complete red herring. Defendants submit that there must be underlying wrongful conduct, not necessarily damages per se. *Hutchins v. Wilentz, Goldman & Spitzer,* 253 F.3d 176, 183 (3d Cir. 2001) ("While recovery under the [False Claims Act] is not dependent upon the

5

government's sustaining monetary damages, the Act is only intended to cover instances of fraud that might result in financial loss to the Government.") (citations omitted). **"[T]here can be no liability for conspiracy where there is no underlying violation of the FCA."** *Pencheng Si*, 71 F. Supp. 3d at 89 (emphasis added). Damages, and the Government's argument about them, are simply irrelevant.

### C.     Count III Cannot be Separated From Counts I and II.

In what Defendants perceive as a subtle recognition of the validity of Defendants' case law, the Government, contrary to all the evidence and its prior argument to the jury and this Court, feel compelled to argue that the Count III conspiracy is completely "distinct" from Counts I and II.  But, as set out in greater detail in Defendants' original memorandum, *see* #469-1 at 10-12, 21-30, and as recognized repeatedly by the Government throughout this litigation, Count III is dependent on both Counts I and II.

The Government's ever-changing theory as to what unlawful conduct is at issue in Count III is telling. In its current pleading, faced with the troublesome *Boyanowski* precedent, the Government claims Defendants "misunderstand the Government's Count III theory." *See* #477 at 27. The Government seemingly goes on to articulate two different theories for Count III. It admits that it represented to the jury during its opening that the Count III conspiracy involved Ms. Seeger sharing commissions with Dr. Fonn (i.e., the unlawful conduct alleged in Count I). *See id.* at 28 n.13. But it then claims it presented a second theory for Count III that did not require the sharing of commissions as alleged in Count I. This after-the-fact argument, made in the face of *Boyanowski*, is without merit. Indeed, that is not what Mr. Lay said just a few minutes later in the opening – "The way these agreements worked is that . . . that Ms. Seeger shared her implant commission revenue from these surgeries." *See id.* at 6 (pluralization of "agreements" in

6

original). The reference was to both agreements. Moreover, the Government's new position is belied by its representations to the Court that "the conspiracy allegation is between Dr. Fonn and Ms. Seeger, and it's that he is making implant decisions and *then she is going to share the proceeds of those implant decisions with him.*" Trial Tr. Vol. I at 103:1-12. Mr. Lay made that assertion trying to support the admission of evidence.[4] The Government cannot disown that representation to this Court, as it may not disown the representations made to the jury.

Despite the Government's attempts to distance itself from the representations it has made to this Court and the jury, Count III's conspiracy has always been about Ms. Seeger allegedly improperly sharing her commissions with Dr. Fonn. The Government specifically alleged in its Complaint that "DS Medical enabled Dr. Fonn to profit from his decisions regarding which implants would be used," *see* #26 at 44, which is incorporated into the allegations of Count III. Likewise, the Complaint contains a full section entitled "DS Medical Provides Remuneration." That full section was incorporated into Count III. Then, it made the representations at trial described above. In addition, during the argument on the motion for directed verdict, the Government represented that its conspiracy "scheme" was as follows: "I'm going to implant the device, you're going to get the commissions, and *then it's going to come back rolling around. And you also have the admissions of Ms. Seeger during her testimony that, look, we shared everything together. My spending from, you know, my commissions of DS Medical weren't independent from Dr. Fonn. You know, all those facts that show this conspiratorial agreement that this is what they were designed to do*." Trial Tr. Vol. VIII at 41:23-42:6. The Government's efforts to rid itself of the conspiracy as they actually filed it in their Complaint and presented it to the jury and to the Court at trial should be rejected in total.

---

[4] The statement by the Government was made immediately after defense counsel stated "I'm not sure how this evidence relates to conspiracy."

7

The Government's efforts to distance Count III from Count II are even more strained. Tellingly, the Government asks the Court to view the underlying basis for Count III "in light of the jury's verdict" instead of in light of the case that the Government presented to the Court, the jury, and the Defendants. It then argues unconvincingly that Count III was presented under a "separate and distinct theor[y]" from Count II. Such an argument is directly contradicted by its arguments throughout the trial, and most importantly, the jury instructions. As to both Counts II and III, the jury was instructed the same, at the Government's request:

> that Defendants knowingly and willfully solicited or received remuneration from spinal implant companies Amedica and Verticor [and the other four manufacturers for Count III], in exchange for arranging for or recommending the purchase or ordering of those companies' products by St. Francis Medical Center.

*See* #422, Instruction Nos. 9 and 13. In fact, the Government's originally submitted instruction for Count III referred back directly to the Count II instruction (Instruction 9). *See* Trial Tr. Vol. X at 55:3-21; 63:2-67:16. And the Government appears to concede that Count II and Count III are the same at least for 53 of the claims at issue. *See* #477 at 5-6.

Because Count III is based on the underlying violations alleged in Counts I and II, under *Boyanowski,* Count III must yield to the jury's verdict in Counts I and II.

**D. Failure of Proof As to All Six Manufacturers**

Defendants have consistently maintained that the Government has failed to prove its Count III claim (i.e., "a conspiracy to submit, or cause to be submitted, claims to Medicare and Medicaid for spinal surgeries that were tainted by kickbacks"). *See, e.g.*, Tr. Vol. VII, p. 35, *et seq.*

Clinging to the mistaken argument that an FCA conspiracy does not require an underlying FCA violation, the Government argues that the Count III conspiracy can be between Dr. Fonn and Ms. Seeger without including the manufacturers. But if the Court agrees with the

8

overwhelming case law requiring proof of an underlying FCA violation to establish an FCA conspiracy, then a mere "agreement" between Dr. Fonn and Ms. Seeger is insufficient.

As Defendants have always argued, to establish the underlying violation of the FCA, there must be establishment of inducement because there must be a violation of the AKS. Violation of the AKS is the only alleged fact which creates the alleged false claims. The AKS requires an inducement.[5]

Whether one calls it a quid pro quo, as the case law does, or something else, an inducement requires a two-sided affair. Even the Government described the Count III conspiracy to the Court in post-trial pleadings as "a conspiracy to submit, or cause to be submitted, claims to Medicare and Medicaid for spinal surgeries *that were tainted by kickbacks*." *See* #449 at 15 (emphasis added). Two sentences later the Government describes the Count III evidence: "Dr. Fonn used an implant from one of the six manufacturers who offered or provided Defendants with *unlawful remuneration*." *Id.* at 16. (emphasis added). Remuneration is not "illegal" without the element of inducement. That is exactly what the parties stipulated to at the instruction conference where the Government agreed the conspiracy had "one purpose"—"to get kickbacks from the manufacturers." Trial Tr. Vol IX at 158. Notwithstanding its current protestation, the Government always presented Count III as involving kickbacks from the manufacturers.[6]

---

[5] Defendants maintain that the Government, during trial, never developed or considered the "inducement" necessary under Count III because they were relying on the "inducement" alleged and rejected in Count I – Ms. Seeger's sharing of benefits with Dr. Fonn.

[6] In fact, as the Government now attempts to describe Count III, not only does it defy every quoted statement cited immediately above, but as described, there would be no crime at all.
  Count III focused on the agreement between Dr. Fonn and Ms. Seeger—an agreement to enrich Ms. Seeger with commission revenue based on Dr. Fonn's spinal device choices. This agreement was not between Defendants and the spinal device companies. As a result, it was sufficient for the government to show that Defendants entered into such an agreement amongst themselves.
  Additionally, that agreement did not require remuneration to pass between Dr. Fonn and Ms. Seeger.
#477 at 5.

Defendants cannot induce or be induced by the manufacturers unless manufacturers are part of the scheme. If the agreement involves only Defendants, then at most there could arguably be a violation of the Stark Act – a crime never alleged. For there to be a conspiracy under Count III – a conspiracy to violate the FCA based on violations of the AKS – there must be a kickback.[7] **Soliciting commissions, exorbitant or standard, however, can never be a kickback unless both sides understand the purpose of the exchange (i.e., an inducement).**

The problem for the Government is it cannot point to evidence which can support a finding that the manufacturers participated in a kickback scheme. Such an argument contradicts everything its own witnesses testified to at trial. As discussed in Defendants' original memorandum, each witness who represented a manufacturer **was called by the Government** and testified that all interactions with Defendants were legitimate. Not one suggested they engaged in kickbacks. More is required of the Government. As the Eighth Circuit has held, the Court is "not entitled to give a party the benefit of unreasonable inferences, or those at war with the undisputed facts. A mere scintilla of evidence is inadequate to support a verdict, and judgment as a matter of law is proper when the record contains no proof beyond speculation to support the verdict." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999).

A close reading of the evidence put forth by the Government is telling. For example, the it argues that "there was ample evidence…[defendants] had entered an agreement to extract lucrative commissions." #477 at 19. But, the Government has never explained (because it cannot) how an agreement to extract lucrative commissions is a conspiracy to violate the AKS. Commissions (lucrative or not) do no constitute a kickback or illegal remuneration.

---

[7] Again, the jury rejected the Government's allegation that Ms. Seeger was providing kickbacks to Dr. Fonn.

10

The Government also purports to find significance with evidence that "Dr. Fonn, and not Ms. Seeger, []asked distributors to hire Ms. Seeger." *See* #477 at 19. Setting aside the issue of whether such evidence would be probative of any part of the Government's case, there is no such evidence related to the six manufacturers in Count III. And there is certainly no evidence that any of the six manufacturers believed they were doing anything improper in connection with Dr. Fonn's dealings with Ms. Seeger. Again, it must be repeated, Verticor witnesses testified they did not even know Dr. Fonn and Ms. Seeger had a relationship. *See* #469-1 at 17-18. And, several manufacturers had no witness appear at all.

The jury's verdict as to Counts I and II confirm what was already true: as to Count III there was a failure of proof.

### E. Defendants Did Not Waive The Underlying Conspiracy Issue.

The Government's claim that Defendants waived the *Boyanowski* argument is baseless because: (1) Defendants argued failure of proof at every stage of these proceedings; and (2) an attack on the viability of the conspiracy count under *Boyanowski* had substance and could only be advanced after the jury rejected the underlying false claims. At each of the earlier stages where Defendants could challenge the evidence supporting Counts I and II, the Defendants did so and the Court denied Defendants relief. Those denials, in turn, precluded the Defendants from arguing *Boyanowski*,[8] because, quite simply, there had been no finding by either the judge or jury that the underlying tort(s) had failed. As stated in *Williams v. Basf Catalysts LLC*, "the utter dependence of the conspiracy claim on the underlying claims arguably suggests that appellate briefing on the underlying claims provided adequate notice, when giving all inference in favor of Plaintiffs. Stated differently, **briefing on the fraud, fraudulent concealment, and NJ RICO**

---

[8] Defendants most certainly argued a failure of proof as to the Count III's conspiracy and as Count II related to the conspiracy. Vol. VII, p. 35, et seq.

11

**claims served as briefing on the civil conspiracy claim**…" 2016 WL 1367375, at *15 (D.N.J. Apr. 5, 2016) (emphasis added). Similarly:

> Chase now also asserts for the first time that Relator cannot plead a conspiracy claim under the FCA when his allegations fail to demonstrate an underlying violation of the FCA. Chase argues that because the Magistrate Judge concluded that there is no underlying FCA violation, then Relator cannot assert a claim for conspiracy. This argument was not presented to the Magistrate Judge, and is argued for the first time to the Court. Based upon applicable case law, Chase's argument appears to be correct; . . . Chase's objection is sustained.

*United States v. Univ. of N. Texas*, No. 4:13-CV-734, 2016 WL 369693, at *6 (E.D. Tex. Feb. 1, 2016), *aff'd*, 673 F. App'x 384 (5th Cir. 2016).

The applicable law relied upon by Defendants (e.g., *Boyanowski*) could only be raised after the jury, with its verdict, became the first finder of fact to establish the failure of proof in Counts I and II. However, now that the failure of proof has been acknowledged, a "***verdict on civil conspiracy should yield to a finding for the defendant on the underlying tort because a cause of action for civil conspiracy is wholly subordinate to the underlying tort's existence***." *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d. 396, 407 (3d Cir. 2000) (emphasis added). The jury's verdict changed the legal landscape "as a matter of law," and therefore, the legal issues *Boyanowski* raises are now, and for the first time, ripe at this time.[9]

The Government also asserts waiver, arguing that Defendants did not offer a proper jury instruction to address the *Boyanowski* issue. This argument is a red herring. *Boyanowski's* applicability has nothing whatsoever to do with Count III's instructions. *Boyanowski* held a civil conspiracy could not stand based on findings of the jury as to the underlying substantive offenses. Jury instructions never came into play. Whether or not the Fonn jury was instructed

---

[9] What cannot be denied is that the jury's verdict is at a minimum, unusual. Its complexity raises legal issues which simply did not surface until the jury reached its conclusions.

12

correctly, the jury's findings on Counts I and II nullify whatever they decided on Count III. As the Third Circuit observed in discussing the relevant case law, "the failure of the underlying fraud claim sufficed as a matter of law to vitiate the finding of civil conspiracy *notwithstanding* the fact that it had been successfully pled as an independent cause of action." *Id*. at 406. The Third Circuit even considered whether the issue should be viewed as an inconsistent verdict but specifically rejected that approach. Rather, it held that "[a] verdict on civil conspiracy should yield to a finding for the defendant on the underlying tort because the cause of action is wholly subordinate to the underlying tort's existence." *Id*. at 407. The conspiracy count does not "yield" to the substantive count at all based on how the jury approached the conspiracy. Instead, as a matter of law, no conspiracy can be found (no matter what elements apply) once there is a finding rejecting the underlying wrongdoing.

Moreover, if the Court felt bound by the jury instructions as given to not apply a matter of law, that conclusion would have to apply to all portions of the instructions and the jury's findings.[10] The Government cannot have it both ways. In support of its own motion for judgment it argued that notwithstanding the fact it drafted and never objected to an instruction and verdict form which allowed the jury to find Dr. Fonn's and Ms. Seeger's liability to be zero, that as a matter of law, it was still entitled to have the Court find both Defendants liable for all damages for which DSM was liable. If there is any validity to a waiver argument based on the jury

---

[10]Moreover, the Government's analysis is flawed. Importantly, the instruction regarding success of the conspiracy is specifically within the instruction explaining Element One of a conspiracy, and thus should only be read as saying success was unnecessary to find an agreement had been reached.
Defendants also note that the Government's argument that Defendants proposed the Count III verdict form is inappropriate. The form was prepared by and submitted by the Government. The Government claims it was the brainchild of the Defendants, but can only suggest that off the record conversations would prove such. Off the record conversations are simply not permitted to be relied on for any argument. Even if Defendants had drafted the form–which they did not – the government never objected.

13

instructions, it would need to apply equally to the Government's failure to object to the verdict form it proffered.[11]

Any flaw in the jury verdict and instructions which now prohibits the Court from determining the claims for which the jury found no underlying violation was committed (as the Government has admitted)—is a flaw caused by the Government. Counts I and II make very clear the jury's determination that there was no underlying violation. The Government, which offered the final verdict form for Count III, did not include any method for making such a determination and opposed Defendants' request that the Count III verdict form allow the jury to identify specific claims for specific defendants. *See* Verdict Form (#418); Tr. Vol. X at 50-56.

Importantly, too, the Government concedes that it is possible that Defendants "had no prior occasion to raise such argument," if "they believed a verdict under Count I or Count II could sustain a conspiracy verdict." #477 at 10. It argues however, that such is not true here because Counts I and II are "distinct" from Count III. However, as discussed elsewhere here and in detail in Defendants' original memorandum, they are not distinct – either Count I or II claims must be the underlying wrongful acts of Count III. No doubt, trying to understand the Government's ever-changing Count III theory is (and was) nearly impossible. Even the Court, at the instruction conference, advised the Government that "honestly I'm not sure I have a proper -- that I necessarily have the correct understanding of the government's claim in Count III to begin

---

[11] Should the Court find some type of waiver, it may still consider the issue under the "well-settled discretionary exception" where a disputed issue concerns a pure question of law. *Forte v. Wal-Mart Stores, Inc.*, 780 F.3d 272, 276 (5th Cir. 2015); *United States v. Thornburg,* 82 F.3d 886, 890 (9th Cir. 1996); *Matter of Reese*, 91 F.3d 37, 39 (7th Cir. 1996); *In re AmTrust Fin. Corp.*, 694 F.3d 741, 750–51 (6th Cir. 2012); *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 944 (11th Cir.); *United States v. Kim*, 176 F.3d 1126, 1127 (9th Cir. 1999).

with." Trial Tr. Vol. X at 40:24-41:1. But it is clear that either Count I or II (or both) is the underlying tort of Count III.

### F. The Five Claims in Count II Also Fail.

Defendants have set out numerous additional grounds in support of their motion in their original memorandum. Space limits do not permit the ability to address them here, but they support judgment in favor of Defendants as to all three Counts in their entirety. Defendants must note here, however, that the Government's argument that the five claims of Count II support any part of Count III's conspiracy is flawed. Clearly, the stock purchase of Amedica at issue in those claims is different than any of the other claims in this case. And, the jury clearly differentiated those five claims. But, the Government now, for the first time, claims that Dr. Fonn's Amedica stock purchase could serve as the underlying basis of Count III. However, the Government conveniently ignores that in Count II, the jury specifically and indisputably found Ms. Seeger was not part of the five claims related to the Amedica stock purchase. This dooms the Government's argument on this point.

### G. At a Minimum 34 Claims and Associated Penalties Must Come Out.

In its Opposition, the Government admitted that "there are only 34 claims for which the jury found that Defendants entered into a conspiracy, but no underlying violation was committed." *See* #477 at 34. Though the Government's analysis to get to only 34 is greatly flawed, at a minimum, given the case law herein and in Defendants' Memorandum, any judgment must exclude damages and penalties from a number of claims.

15

Dated:  November 19, 2018			Respectfully submitted,

                                                        DOWD BENNETT LLP

By:  */s/ James G. Martin*
     James G. Martin #33586MO
     Edward L. Dowd, Jr. #28785MO
     James F. Bennett #46826MO
     Robert F. Epperson, Jr. #46430MO
     7733 Forsyth Blvd., Suite 1900
     St. Louis, MO 63105
     314/889-7300 (Telephone)
     314/863-2111 (Facsimile)
     jmartin@dowdbennett.com
     edowd@dowdbennett.com
     jbennett@dowdbennett.com
     repperson@dowdbennett.com

THE LIMBAUGH FIRM

By:  */s/ Curtis O. Poore*
     Curtis O. Poore #38067MO
     407 N. Kingshighway, Suite 400
     Post Office Box 1150
     Cape Girardeau, MO 63702-1150
     573/335-3316 (Telephone)
     573/335-0621 (Facsimile)
     curt@limbaughlaw.com

*Attorneys for Defendants Sonjay Fonn, D.O. and Midwest Neurosurgeons LLC*

        CAPES, SOKOL, GOODMAN &
          SARACHAN, P.C.

By: */s/ Sanford J. Boxerman*
    Sanford J. Boxerman #37436MO
    Drey A. Cooley #58784MO
    7701 Forsyth Blvd., 12th Floor
    St. Louis, MO 63105
    314/505-5470 (Telephone)
    314/505-5471 (Facsimile)
    boxerman@capessokol.com
    cooley@capessokol.com

*Attorneys for Deborah Seeger and D.S. Medical, L.L.C.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 19, 2018 the foregoing was filed electronically with the Clerk of Court using the CM/ECF system which will send a notification to all counsel of record.

    */s/ James G. Martin*