UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. PAUL CAIRNS, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:12CV00004 AGF |
| | ) | |
| D.S. MEDICAL, L.L.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This qui tam action under the False Claims Act ("FCA") is before the Court on

Defendants' renewed motion for judgment as a matter of law or, alternatively, for a new

trial (ECF No. 468), and their motion to dismiss or for judgment as a matter of law

based on the position that the U.S. Department of Justice ("DOJ") took in the Fifth

Circuit in the case of *Texas v. United States*, 945 F.3d 355 (5th Cir. 2019) (ECF No.

482).  For the reasons set forth below, the Court will deny both motions.

## BACKGROUND

There are four Defendants in this action—two individuals and two limited

liability corporations of which the individuals were alleged to be the single-members

and agents, respectively: Dr. Sonjay Fonn and Midwest Neurosurgeons, LLC

("Midwest"); and Debra Seeger and D.S. Medical, LLC ("D.S. Medical").  The many

memoranda and orders issued by the Court in this case set forth the claims, defenses,

and legal and factual issues involved in the case.  Briefly, Plaintiff claimed that

Defendants violated the FCA by submitting or causing to be submitted to the Medicare and Medicaid programs false claims for reimbursement for Fonn's services in performing spinal surgeries at St. Francis Medical Center ("SFMC") between December 2008 and March 2012, and for the purchase of implant devices through D.S. Medical, a distributor of medical devices, used in those surgeries.  The claims for reimbursement were allegedly false because they were the result of kickbacks that violated the federal criminal Anti-Kickback Statute ("AKS").

The three claims submitted to the jury, corresponding to the three counts of the complaint, were that:

(1) Seeger and D.S. Medical gave kickbacks to Fonn and Midwest in exchange for Fonn and Midwest arranging the purchase of spinal implants (used by Fonn in his surgeries) through D.S. Medical;

(2) all four Defendants solicited or received kickbacks from two implant manufacturers (Amedica and Verticor) in exchange for arranging the purchase of Amedica's and Verticor's products by SFMC, with respect to 53 claims for reimbursement; and

(3) all four Defendants conspired to violate the FCA by entering into an agreement that involved Defendants soliciting or receiving kickbacks from six implant manufacturers (including Amedica and Verticor) in exchange for arranging the purchase of those companies' products by SFMC, with respect to 223 claims for reimbursement.

The jury was instructed as to Count III's claim of FCA conspiracy in relevant part as follows:

## INSTRUCTION NO. 12

With respect to the United States' claims for conspiracy to violate the False Claims Act, as to each Defendant individually, your verdict must be for the United States and against the Defendant if you believe, by a preponderance of the evidence, that:

*First*, from on or around January 2009 through on or before March 31, 2012, two or more people or entities reached an agreement or understanding to submit or cause the submission of claims for payment to the government which falsely or fraudulently represented compliance with the Anti-Kickback Statute, as defined in Instruction No. 13;

*Second*, the Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect;

*Third*, at the time the Defendant joined in the agreement or understanding, the Defendant knew the purpose of the agreement; and

*Fourth*, while the agreement or understanding was in effect, a person or persons who had joined in the agreement or understanding knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement or understanding.

## INSTRUCTION NO. 13

With respect to the first element of the conspiracy claims as described in Instruction No. 12 and further defined in Instruction No. 10, the United States alleges that the agreement or understanding to submit or cause the submission of claims in violation of the Anti-Kickback Statute involved the Defendants knowingly and willfully soliciting or receiving remuneration from spinal implant companies Amedica, Verticor, Life Spine, Genesys, Ethical Medical, and Omni (aka Spine 360), in exchange for arranging for or recommending the purchase or ordering of those companies' products by St. Francis Medical Center.

The Anti-Kickback Statute is violated if a person:

(1) Knowingly and willfully solicits or receives remuneration, directly or indirectly; and

(2) At least one purpose for the solicitation or receipt of the remuneration was in return for arranging for or recommending the purchasing or ordering of an item or service; and

(3) The item or service may be paid for, in whole or in part, by Medicare or Medicaid.

## INSTRUCTION NO. 14

Element One of the conspiracy claims requires that two or more people or entities reached an agreement or understanding to submit or cause the submission of claims for payment to the government which falsely or fraudulently represented compliance with the Anti-Kickback Statute.

The agreement or understanding between two or more people or entities to submit or cause the submission of false claims does not need to be a formal agreement or be in writing. A verbal or oral understanding can be sufficient to establish an agreement or understanding.

It does not matter whether the false or fraudulent claims were actually submitted or whether the alleged participants in agreement actually succeeded in accomplishing their unlawful plan.

The agreement or understanding may last a long time or a short time. The members of an agreement or understanding do not all have to join it at the same time. You may find that someone joined the agreement or understanding even if you find that person did not know all of the details of the agreement or understanding.

\*   \*   \*

## INSTRUCTION NO. 17

. . . [A] conspiracy is a kind of "partnership" so that under the law each member is an agent or partner of every other member and each member is bound by or responsible for the acts of every other member done to further their scheme. . . . [and] a person who knowingly, voluntarily and intentionally joins an existing conspiracy becomes responsible for all of the conduct of the coconspirator.

\*   \*   \*

## INSTRUCTION NO. 19

If liability for conspiracy to violate the False Claims Act is established, each conspirator is liable for each of the acts taken for the purpose of carrying out or carrying forward the agreement or understanding and for damages arising from the conspiracy even if he or she did not personally commit all of the acts that may take place under the conspiracy.

4

ECF No. 422, Jury Instr. Nos. 12, 13, 14, 17 & 19.

On Count I, the jury found in favor of all four Defendants, and the Court entered judgment accordingly.  *See* ECF No. 465.   On Count II, the jury found in favor of Seeger and D.S. Medical; the jury found against Fonn and Midwest with respect to 5 of the 53 claims and in favor of these Defendants with respect to the remaining 48 claims.  For the reasons explained in its prior Memorandum and Order granting in part Plaintiff's motion for entry of judgment, the Court entered judgment on Count II in favor of Seeger and D.S. Medical, and, after trebling the damages pursuant to the applicable statute, against Fonn and Midwest jointly and severally in the amount of $303,529.50.  The Court also assessed statutory civil penalties against Fonn in the amount of $27,500, and against Midwest in the amount of $16,500.  *Id.*

With respect to Count III, the jury found against all four Defendants, but it awarded $0 damages against Fonn and Seeger, while it awarded damages of $150,000 against Midwest, and damages of $1,652,557.35 against D.S. Medical.   On a chart submitted to the jury listing 228 claims for reimbursement, the jury found, and affirmatively indicated, that all 228 claims listed on the chart were false.  Plaintiff conceded it was only seeking damages and penalties as to the 223 of these claims that were subject to the conspiracy alleged in Count III.  For the reasons explained in its prior Memorandum and Order, after reducing the verdict in part based on Plaintiff's concessions and Defendants' arguments, and after trebling the damages and assessing a civil penalty pursuant to the applicable statute, the Court entered judgment on Count III

5

against all four Defendants, jointly and severally, in the amount of $5,495,931.22.[1]

Defendants now move for judgment as a matter of law or for a new trial as to all three counts.  Defendants separately move to dismiss or for judgment as a matter of law as to all counts based on the position that DOJ took in the Fifth Circuit in the case of *Texas v. United States*, 945 F.3d 355 (5th Cir. 2019).  The Court will address each of Defendants' arguments in turn.

## DISCUSSION

### Standard of Review

Judgment as a matter of law under Federal Rule of Civil Procedure 50(a) "is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party." *Allstate Indem. Co. v. Dixon*, 932 F.3d 696, 702 (8th Cir. 2019), *reh'g denied* (Sept. 12, 2019).  "In making this decision, the court must draw all reasonable inferences in favor of the nonmoving party and must not judge credibility or weigh evidence." *White v. Union Pac. R.R. Co.*, 867 F.3d 997, 1000–01 (8th Cir. 2017)

Moreover, Federal Rule of Civil Procedure 50(b) "allows the moving party to renew its Rule 50(a) motion after the jury renders its verdict, but a party may not advance new arguments in its Rule 50(b) motion  that were not properly raised in its Rule 50(a) motion" made before the case was submitted to the jury. *Miller v. Huron Reg'l Med.*

---

[1]      The Court noted that the damages under Count II would be duplicative of the damages under Count III.  Thus, although the Court entered judgment on each count, the Court held that Plaintiff would be limited to recovering $5,495,931.22.  ECF No. 465.

*Ctr.*, 936 F.3d 841, 847–48 (8th Cir. 2019).

As for the motion for a new trial, under Rule 59(a)(1)(A), "[a] new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996).  A miscarriage of justice does not result whenever there are inaccuracies or errors at trial; instead, the party seeking a new trial must demonstrate that there was prejudicial error.  *Buchholz v. Rockwell Int'l Corp.*, 120 F.3d 146, 148 (8th Cir. 1997).  "Motions for new trials are generally disfavored and will be granted only where a serious miscarriage of justice may have occurred." *United States v. Petroske*, 928 F.3d 767, 774 (8th Cir. 2019).

## Defendants' New Conspiracy Argument  (*Ground I*)

Defendants' first and primary argument in the current motion is that an FCA conspiracy claim cannot succeed without a finding of liability for a substantive FCA offense, so the jury's verdict in Defendants' favor as to 48 claims in Count II requires judgment to be entered in Defendants' favor as to those claims in Count III.  For the same reason, Defendants argue that the jury's verdict in Defendants' favor on Count I and in Seeger's and D.S. Medical's favor on Count II undermine the jury's verdict in Plaintiff's favor on Count III.

Whatever the merit of Defendants' argument, the Court agrees with Plaintiff that it has been waived.  As an initial matter, Defendants failed to raise this argument in their Rule 50(a) motion or to otherwise address the issue in jury instructions or at any time before the jury began deliberations.  Defendants maintain that their failure to do so

should be excused because it was not until after the jury rendered its verdict that the inconsistency of the jury's findings became apparent.  But this legal issue should have been apparent well before the jury issued its verdict.  Indeed, both Defendants' own proposed verdict form (ECF No. 415), and the verdict form actually used at trial with no objection from Defendants (ECF No. 418), permitted the jury to render such allegedly inconsistent findings and did not advise the jury that it was required to find in favor of Defendants on Count III to the extent it did so in Counts I or II.  *See Miller*, 936 F.3d at 848 (8th Cir. 2019) (denying a defendant's Rule 50(b) attack regarding the legal sufficiency of one claim based on a jury's "split verdict" in favor of the defendant on a related claim where the defendant failed to raise the argument in a Rule 50(a) motion and failed to object to jury instructions or the verdict form, which permitted such split findings).

Further, as noted above, Jury Instruction No. 14 provided with respect to the first element of the FCA conspiracy claim that "[i]t does not matter whether the false or fraudulent claims were actually submitted or whether the alleged participants in agreement actually succeeded in accomplishing their unlawful plan."  ECF No. 422 at 16. Defendants never objected to that instruction, despite objecting to numerous other instructions.[2]

---

[2]     Any objection was required to be specific.  *See* Fed. R. Civ. P. 51(c)(1) ("A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection.").  "A general objection to a jury instruction, even when it encompasses a specific objection, is insufficient." *Bauer v. Curators of Univ. of Missouri*, 680 F.3d 1043, 1045 (8th Cir. 2012).

Defendants cannot now assert that a jury finding in accordance with that instruction—namely, finding Defendants liable for conspiring to violate the FCA without necessarily finding that Defendants successfully violated the FCA with respect to all of the claims at issue—is erroneous.  *See, e.g.*, *Ruocco v. Hemmerdinger Corp.*, 711 F. App'x 659, 663 (2d Cir. 2017) (unpublished) (holding that defendants waived their post-trial argument that a RICO conspiracy claim cannot succeed unless at least one defendant is found liable for a substantive RICO offense where the defendants did not object to the trial court's instruction advising the jury that the two claims (conspiracy and substantive offense) were independent of one another).

At best, Defendants' new argument would be subject to plain-error review.  *See Miller*, 936 F.3d at 848.  "Plain error exists if: (1) the district court deviates from a legal rule; (2) the error is clear under current law; . . . (3) the error affects substantial rights, which ordinarily means that the error affects the outcome of the proceedings"; and "(4) [the error] seriously affects the integrity, fairness, or public reputation of judicial proceedings."  *Bauer*, 680 F.3d at 1045.

If any error occurred here, it was not plain.  The legal issue Defendants raise is far from clear, Defendants not having cited any binding caselaw addressing this sort of mixed verdict under the FCA.  And even assuming, without deciding, that Jury Instruction No. 14 were a misstatement of the law, in light of Defendants' failure to object to the instruction or propose a correct instruction or verdict form, the error did not seriously affect the integrity, fairness, or public reputation of the judicial proceedings, or otherwise result in a miscarriage of justice so as to warrant a new trial.  *See, e.g.*, *Miller*,

9

936 F.3d at 848 (finding no manifest injustice under plain-error review in light of defendant's failure to raise a defense based on a split verdict earlier); *Munson v. Norris*, 375 F. App'x 638, 642 (8th Cir. 2010) (unpublished) ("[B]ased on [defendant's] inaction at the trial court level and his failure to provide the court with correct jury instructions, we conclude that the district court's instruction did not rise to the level of plain error."); *Shade v. Hous. Auth. of City of New Haven*, 251 F.3d 307, 313 (2d Cir. 2001) ("Nor do we see how holding the defendants to a jury verdict that faithfully followed an instruction and verdict form that they themselves urged upon the court could give rise to a miscarriage of justice.").

Further, the jury awarded substantial damages on Count III, far in excess of those granted in Count II.  As such, it is reasonable to conclude that the jury found that the government paid some of the claims that were false under Plaintiff's theory of liability with respect to the commissions paid by the manufacturers.

**Remaining Arguments**

*Ground II*

As their second ground, Defendants assert that the verdict in Defendants' favor as to 48 of the of the claims in Count II requires that judgment be entered for Defendants with respect to Count III on those claims.  Defendants' argument relies primarily on the conspiracy argument discussed above, and to that extent is rejected for the same reason. In light of the instructions, the jury could have found Defendants liable for conspiracy, notwithstanding its determination on that transaction in Count II.  And inasmuch as the

damages awarded on Count III is less than the full amount of claims submitted, the Court cannot say that the jury awarded damages as to any such transactions.

Defendants further argue that the jury's finding of liability on the five claims related to Amedica in Count II was based *solely* to Fonn's purchase of Amedica stock, which Defendants characterize as a wholly separate basis from that asserted with respect to the other Count II claims.[3]  However, this is speculation on Defendants' part.  The jury may well have determined that the purchase of stock was but a contributing factor.  As Plaintiff noted in its response, the evidence showed that the commission rate to D.S. Medical on Amedica purchases increased shortly after a dinner at which the stock purchase was discussed with Amedica representatives.  Thus, for example, the jury could have determined that the stock was purchased, in part, in order increase the commission paid to D.S. Medical, which was in turn paid to induce Fonn to order Amedica products.

*Ground III*

In their third ground, Defendants assert that they are entitled to judgment with respect to the kickbacks received from the manufacturers other than Verticor and Amedica because the Plaintiff failed to present sufficient evidence with respect to these claims.  The Court finds no basis for Defendants' suggestion that the Plaintiff's case depended almost entirely on the theory supporting Count I—namely, kickbacks paid to

---

[3]     The Court finds no basis for Defendants' further argument that Plaintiff failed to disclose the Amedica stock purchase as illegal remuneration during discovery. Defendants had fair notice of the evidence prior to trial, did not move in limine to exclude the evidence prior to trial, and did not object when the evidence was presented at trial.

Fonn from Seeger and D.S. Medical.  Rather, Plaintiff presented more than sufficient

evidence to support that Defendants knowingly and willfully solicited or received

remuneration—in the form of payments to D.S. Medical—from the spinal implant

manufacturers in exchange for Defendants arranging to purchase the manufacturers'

implants.

### Ground IV

Defendants' argument in Ground IV, that they are entitled to judgment on Count

III because a conspiracy between Fonn and Midwest is not actionable, fails for the

reasons stated above.  This circular argument depends upon a determination that Seeger

and D.S. Medical cannot be liable on Count III because they were found to have no

liability under Counts I and II, and thus, under Defendants' new conspiracy theory,

cannot be liable under Count III.  As noted above, Defendants waived any such argument

with respect to the conspiracy count and instructions.  Moreover, as stated above, it is

reasonable to assume, in light of the damages awarded, that the jury believed that claims

were submitted in violation of the AKS.  Indeed, the jury awarded significant damages

against D.S. Medical.   And though the jury awarded no damages against the individual

defendants, the jury found all four defendants liable for conspiracy as alleged in Count

III—a finding that this Court finds is more than amply supported by the evidence.

### Grounds V and VI

In light of the discussion above, the Court finds no basis for Defendants' assertion

in Grounds V and VI, that the jury's verdict on Count I requires the entry of judgment in

Defendants' favor on Count III.  Defendants' desire to reframe the evidence to depend,

wholly, on the theory of liability underlying Count I does not make it so.  Plaintiff presented a separate theory of liability with respect to the solicitation and receipt of commission payments from the manufacturers, and presented sufficient evidence at trial to support the jury's verdict.

Likewise, there is more than sufficient evidence in the record to support a finding, consistent with Instruction Nos. 12 and 13, that Defendants acted knowingly and willfully in soliciting and receiving remuneration from the spinal implant manufacturers in exchange for recommending the purchase of their products.  Indeed, the record is quite clear that Fonn controlled what implants were used in his surgeries and purchased through SFMC; that he would not use any implants that did not pay a hefty commission to D.S. Medical; that this was part of the Defendants' agreement and plan from the inception of D.S. Medical and throughout its existence; and that Seeger was well aware of and willfully participated in the plan.  There is also no doubt that Fonn and Seeger— the sole members of Midwest and D.S. Medical, respectively—knew of the prohibition in the AKS and that the government would not pay claims tainted by any such kickbacks.

*Grounds VII - XII*

Defendants asserted their remaining arguments at earlier stages of the court proceedings, and this Court rejects them for the same reasons stated in its prior orders. The Court does not accept that the FCA depends on a "but-for" analysis.  Likewise, the Court continues to hold that a violation of the AKS satisfies the FCA's materiality requirement and, in any event, believes the record contains sufficient evidence both that the government would not pay claims that violated the AKS and that Defendants were

well aware of this fact.  The Court also rejects, for the reasons stated in its prior rulings,

Defendants' argument that they could not be found liable for causing SFMC to submit

false claims, without a showing that SFMC was aware of the falsity.  For the reasons

stated in prior rulings, the Court also rejects Defendants' argument that Plaintiff must

show that the inducement of the referrals was the "primary purpose" of the remuneration,

as well as the argument with respect to the proper standard of proof.

**<u>Motion Based on <i>Texas v. United States</i></u>**

Finally, and more recently, Defendants filed a new Motion to Dismiss and Rule 50

Motion based on the position that DOJ took in the Fifth Circuit in the case of *Texas v.*

*United States*, 945 F.3d 355 (5th Cir. 2019).  By way of background, on March 23, 2010,

President Barack Obama signed into law the Patient Protection and Affordable Care Act

(the "ACA"), Pub. L. No. 111-148 (March 23, 2010).  One key provision of the ACA was

the individual mandate, and the related "shared responsibility payment," which provided

for the payment of a penalty in many instances in which individuals failed to maintain

minimum health insurance coverage.  *See* 26 U.S.C. § 5000A(b)(1).  The Supreme Court,

in  *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012),

determined that the individual mandate was a valid exercise of Congressional taxing

power.  *Id.* at 574.

The ACA also added other, unrelated provisions, including certain provisions

pertaining to the prosecution of healthcare fraud claims.  *Texas v. United States*, 945 F.3d

at 396-97, 401, 418 (King, J., dissenting) (noting, "the ACA contains countless other

provisions that are unrelated to the private insurance market – and many that are only

14

tangentially related to health insurance at all").  Among these provisions was the addition

of subsection (g) to the AKS, which provides that "a claim that includes items or services

resulting from a violation of this section constitutes a false or fraudulent claim for

purposes of" the FCA.  42 U.S.C. § 1320a-7b(g).[4]

In 2017, Congress eliminated any tax penalty for failure to comply with the

individual mandate, effective January 1, 2019.  As a result of that change, many new

challenges were brought to the ACA.  In 2018, the district court in *Texas v. United States*,

held that the ACA's individual mandate was unconstitutional, and further determined that

the individual mandate was "inseverable" from the rest of the of the ACA, rendering the

entire ACA invalid.  *Texas v. United States*, 340 F. Supp. 3d 579 (N.D. Tex. 2018).  In

the district court litigation, DOJ did not defend the individual mandate, but argued that

other provisions of the ACA were severable.  The district court stayed its decision

pending appeal to the Fifth Circuit.

In March of 2019, when Defendants in this case filed the instant motion, DOJ

informed the Fifth Circuit that it had changed its position with respect to severability, and

agreed with the lower court that the entire ACA was invalidated by Congress's action in

2017.  In their current motion, Defendants herein argue that the government's actions in

arguing that the ACA is unconstitutional, while seeking to enforce certain provisions of

---

[4]     As discussed below, in prior orders issued in this case, this Court ruled that this
2010 amendment was not material to Plaintiff's claims.  Consistent with the vast majority
of other courts to consider the issue, this Court ruled that violations of the AKS in claims
submitted for payment to Medicare or Medicaid were actionable as violations of the
FCA, even before the 2010 amendments to the AKS.

the ACA against these Defendants, constitutes arbitrary enforcement against Defendants, rendering the statute unconstitutionally vague.  ECF No. 486 at 1,3.

Defendants' argument must be rejected for several reasons.  First, the Fifth Circuit has since reversed the district court's decision on the issue of severability, remanding for further consideration.  *Texas v. United States*, 945 F.3d at 401-402, *cert. granted sub nom. Texas v. California*, No. 19-1019, 2020 WL 981805 (Mar. 2, 2020).  Moreover, Defendants' liability is not dependent on the ACA's amendments to the AKS in 2010. This Court held in its prior orders in this case that the language added to the AKS by the ACA merely codified and clarified existing precedent.  *See* ECF No. 97 at 8; ECF No. 251 at 8.  As detailed more fully in Plaintiff's opposition to Defendants' motion (ECF No. 485 at 7-8), this Court's prior rulings are consistent with the vast majority of the courts to consider the issue.  *See, e.g., United States ex rel. Hutcheson v. Blackstone Medical, Inc.*, 647 F.3d 377, 391-92 (1st Cir. 2011); *United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 565 F. Supp. 2d 153, 159 (D.D.C. 2008).  Thus, liability for Defendants' actions—which occurred both before and after the 2010 amendment and well before Congress eliminated the tax penalty for failing to comply with the individual mandate—were a violation under the then-existing law, and would remain a violation even if the 2010 amendments to the AKS were to be invalidated.

But the main reason to reject Defendants' argument is that it is simply unfounded. While DOJ changed its position with respect to severability, its briefs before the Fifth Circuit make clear that its argument did not extend to provisions unrelated to the

provision of insurance.  In its brief, DOJ made clear that that the ruling invalidating the ACA should be limited only to the provisions of the ACA that actually injure the plaintiffs, such as the insurance reforms, but not include other provisions, such as the criminal statutes for health care fraud and the amendments to the anti-kickback statutes.[5]

Specifically, DOJ argued that the individual plaintiffs had standing to challenge "the ACA's injurious insurance reforms," and could argue that those provisions were inseverable on the ground that the entire ACA is inseverable from the individual mandate and related provisions.  But DOJ added, plaintiffs "plaintiffs do not have standing to seek relief against provisions of the ACA that do not in any way affect them."  Brief for the Federal Defendants, *Texas v. United States*, 945 F.3d 355 (5th Cir. 2019) (No. 19-10011), 2019 WL 2029722 at *26.  DOJ further argued that relief on appeal "should be limited only to those provisions that actually injure the individual plaintiffs."  *Id.* at *28.  DOJ referenced the fact that "the ACA amended several criminal statutes used to prosecute individuals who defraud our healthcare systems," expressly citing to one provision defining scienter required for healthcare fraud and anti-kickback violations, and argued: "It is unlikely that the plaintiff here would have standing to challenge the validity of those statutes."  *Id*.

In its supplemental letter brief, filed on July 3, 2019, DOJ made plain its position that "the district court's judgment [was] overbroad" and that "the court's judgment

---

[5]      Defendants apparently based their argument on the two-sentence letter DOJ sent to the Fifth Circuit in March, 2019, notifying the appellate court of DOJ's changed position, but Defendants unfortunately did not later advise this Court of DOJ's actual arguments before the Fifth Circuit.

should be affirmed on the merits, *except insofar as it purports to extend relief to ACA provisions that are unnecessary to remedy plaintiffs' injuries.*"  Supplemental Letter Brief for the Federal Defendants, *Texas v. United States*, 945 F.3d 355 (5th Cir. 2019) (No. 19-10011), 2019 WL 2912357, at *6  (emphasis in original).   Indeed, the district court's failure properly to address DOJ's argument, or consider the impact on unrelated provisions, such as "the provisions in Title X establishing the level of scienter necessary to be convicted of healthcare fraud," was one basis for the Fifth Circuit's reversal and remand on the issue of severability.  *Texas v. United States*, 945 F.3d at 400-401.

In the Fifth Circuit, DOJ did not take the position that the criminal health care amendments of the ACA should be invalidated.   As such, with respect to the enforceability of subsection (g) of the AKS—the provision at issue here—DOJ has not taken an inconsistent position, and Defendants' argument fails as unsupported.

**<u>CONCLUSION</u>**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for judgment as a matter of law or, alternatively, for a new trial  is **DENIED**.  ECF No. 468.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss and Rule 50 Motion Based on *Texas v. United States*, is **DENIED**.  ECF No. 482.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 15th day of April, 2020.